```
1  RICHARD GOETZ (S.B. #115666)
   O'MELVENY & MYERS LLP
2  400 South Hope Street
   Los Angeles, CA 90071-2899
3  Telephone:  (213) 430-6000
   Facsimile:  (213) 430-6407
4  E-Mail:     rgoetz@omm.com

5  ROBERTA VESPREMI (S.B. #225067)
   O'MELVENY & MYERS LLP
6  2765 Sand Hill Road
   Menlo Park, CA 94025
7  Telephone:  (650) 473-2600
   Facsimile:  (650) 473-2601
8  E-Mail:     rvespremi@omm.com

9  Attorneys for Plaintiff
   LIFESCAN SCOTLAND, LTD.
```

ADR
E-filing
ORIGINAL FILED
SEP 09 2011
Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

By FAX

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CV11-04494 MEJ

| | |
|---|---|
| LIFESCAN SCOTLAND, LTD., | Case No. |
| Plaintiff, | COMPLAINT |
| v. | DEMAND FOR JURY TRIAL |
| SHASTA TECHNOLOGIES, LLC, INSTACARE CORP., PHARMATECH SOLUTIONS, INC., and CONDUCTIVE TECHNOLOGIES, INC., | |
| Defendants. | |

Plaintiff LifeScan Scotland, Ltd. ("LifeScan Scotland") hereby files this Complaint against Defendants Shasta Technologies, LLC ("Shasta"), InstaCare Corp. ("InstaCare"), PharmaTech Solutions, Inc. ("PharmaTech"), and Conductive Technologies, Inc. ("Conductive") (collectively the "Defendants") and alleges as follows:

COMPLAINT

4908254v.1

## NATURE OF THE ACTION

1. This is an action for damages and injunctive relief to remedy infringement of U.S. Patent Nos. 5,708,247 ("the '247 Patent") and 6,241,862 ("the '862 Patent") (collectively, "the patents-in-suit") assigned to and/or owned by LifeScan Scotland arising under the patent laws of the United States, 35 U.S.C. § 101, *et seq*. The inventions at issue involve disposable blood glucose testing strips for sufferers of diabetes.

## THE PARTIES

2. Plaintiff LifeScan Scotland is a private limited company organized under the laws of the United Kingdom, having its headquarters and principal place of business at Beechwood Park North, Inverness, Inverness-Shire, IV2 3ED, Scotland, United Kingdom. LifeScan Scotland is an indirect subsidiary of LifeScan, Inc. ("LifeScan").

3. LifeScan is a corporation organized under the laws of the State of California, having its headquarters and principal place of business at 1000 Gibraltar Drive, Milpitas, California 95035.

4. On information and belief, Shasta is a corporation organized under the laws of the State of Oregon, having a principal place of business at 7340 Hunziker Road, Suite 205, Tigard, Oregon 97223.

5. On information and belief, InstaCare is a corporation organized under the laws of the State of Nevada, having a principal place of business at 2660 Townsgate Road, Suite 300, Westlake Village, California 91361.

6. On information and belief, PharmaTech is a corporation organized under the laws of the State of Nevada, having a principal place of business at 2660 Townsgate Road, Suite 300, Westlake Village, California 91361.

7. On information and belief, Conductive is a corporation organized under the laws of the State of Pennsylvania, having a principal place of business located at 935 Borom Road, York, Pennsylvania, 17404.

4908254v.1

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. On information and belief, this Court has personal jurisdiction over Shasta because Shasta has had continuous, systematic, and substantial contacts with the State of California, including doing business in this judicial district and having a place of business within this judicial district at 3257 Highway 128, Calistoga, California 94515.

10. On information and belief, this Court has personal jurisdiction over InstaCare because InstaCare has had continuous, systematic, and substantial contacts with the State of California, including doing business in this judicial district and having a principal place of business within the State of California at 2660 Townsgate Road, Suite 300, Westlake Village, California 91351.

11. On information and belief, this Court has personal jurisdiction over PharmaTech because PharmaTech has had continuous, systematic, and substantial contacts with the State of California, including doing business in this judicial district and having a principal place of business with the State of California at 2660 Townsgate Road, Suite 300, Westlake Village, California 91351.

12. On information and belief, this Court has personal jurisdiction over Conductive because Conductive has had continuous, systematic, and substantial contacts with the State of California, including regularly doing business in this judicial district, and has entered into a contract with a Shasta, Instacare, and or PharmaTech to supply products made by infringing Lifescan Scotland's patents into this judicial district.

13. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b).

**BACKGROUND**

14. On January 13, 1998, the United States Patent and Trademark Office ("the PTO") issued the '247 Patent, entitled "Disposable Glucose Test Strips, and Methods and Compositions for Making Same." A true and correct copy of the '247 Patent is attached as Exhibit A.

15. LifeScan Scotland holds title to the '247 Patent.

16. On June 5, 2001, the PTO issued the '862 Patent, entitled "Disposable Test Strips With Integrated Reagent/Blood Separation Layer." A true and correct copy of the '862 Patent is attached as Exhibit B.

17. LifeScan Scotland holds title to the '862 Patent.

18. LifeScan sells strips for blood glucose testing under the name OneTouch® Ultra®.

19. The OneTouch® Ultra® test strips are manufactured by methods within the scope of one or more claims of the patents-in-suit. The number of each of the patents-in-suit is marked on the packaging for each OneTouch® Ultra® test strip that is sold, offered for sale, or imported into the United States by LifeScan. All OneTouch® Ultra® test strips made by processes within the scope of one or more claims of the patents-in-suit that are sold, offered for sale, or imported into the United States by LifeScan are marked with numbers of the patents-in-suit in the manner prescribed by 35 U.S.C. § 287(a).

20. The OneTouch® Ultra® strips are designed for use with the OneTouch® Ultra® family of glucose monitors, including the OneTouch® Ultra®, OneTouch® Ultra® 2, OneTouch® UltraSmart®, OneTouch® UltraLink®, and OneTouch® UltraMini®.

21. Plaintiff is not presently aware of any test strip that is designed for the use with the OneTouch® Ultra® family of glucose monitors that is manufactured by a method that is not within the scope of one or more claims of the patents-in-suit. On information and belief, there is a substantial likelihood that any test strip designed for use with the OneTouch® Ultra® family of glucose monitors would be made by methods that are within the lawful scope of one or more claims of the patents-in-suit.

22. Plaintiff is not aware of any non-infringing way to make a test strip that will work with the OneTouch® meters to provide, reliable, accurate, and usable readings.

23. On information and belief, the Defendants manufacture or threaten to manufacture test strips for glucose diagnostics. On information and belief, the Defendants market or threaten to market these test strips under the name "Shasta Genstrips." As discussed in more

- 4 -      COMPLAINT

detail below, upon information and belief, Shasta Genstrips are designed to work with the OneTouch® meters to provide accurate and useable readings.

24. On information and belief, Shasta has applied to the United States Food and Drug Administration ("FDA") for pre-market approval of Shasta Genstrips. On information and belief, upon receiving FDA approval, the Defendants will begin to sell or offer to sell Shasta Genstrips in the United States.

25. On information and belief, Shasta has also applied to various regulatory bodies around the world seeking to market its Shasta Genstrips in those countries.

26. On information and belief, Shasta and PharmaTech have entered an agreement regarding the control, management, and distribution of Shasta Genstrips, including distribution within the United States.

27. On information and belief, Shasta, PharmaTech, and/or InstaCare have entered an agreement with Conductive regarding the manufacture of Shasta Genstrips, including for distribution within the United States.

28. On April 18, 2011, a press release was issued over PR Newswire entitled "InstaCare Subsidiary Signs New Agreement for Expanded Management and Sales of Shasta Genstrip Into the $20 Billion Worldwide Diabetes Testing Market." (hereinafter the "April 18th press release"). A copy of the press release is attached as Exhibit C.

29. The press release states as follows:

> LOS ANGELES, April 18, 2011 /PRNewswire/ -- InstaCare Corp. (OTCQB: ISCR) a leading provider of prescription diagnostics, home testing products for the chronically ill, a leading fulfillment provider of direct to patient diabetes programs, and a leading developer of revolutionary cell phone centric e-health products and technologies, today announced that its operating subsidiary, Pharma Tech Solutions, Inc., has significantly expanded its agreement to control, manage and distribute the novel at-home diagnostic product, *the Shasta Genstrip. This diagnostic consumable is targeted at an existing, FDA-approved platform for in-home diabetes testing, the market leader in the $20 billion worldwide market.*

4908254v.1

The revised and expanded agreement provides Pharma Tech Solutions ("Pharma Tech") with worldwide distribution rights to all markets and complete control of the Genstrip diabetes diagnostic product, including regulatory responsibility with the US FDA, Medicare and Medicaid, plus the European Economic Area approval of the mandatory "CE" (Conformite Europeenne) conformance mark.

"This expanded agreement provides us with greater control and significantly broadens our market opportunity, accelerating our pathway to market and increasing the ultimate potential of this business line," commented Keith Berman, President of Pharma Tech Solutions, Inc. and CFO of InstaCare. "This increased control is of paramount importance, as it allows us to drive the regulatory approval process and better manage the overall initiative. We are moving with all due haste while simultaneously building a distribution, sales and marketing infrastructure necessary to support this game-changing product."

This new diagnostic product will be targeted at diabetics already a part of the world-wide at-home diabetes testing market estimated to exceed $20 billion in 2010. ***Shasta Genstrip, an alternative test strip, is comparable to the existing diagnostic provided by the platform manufacturer, but priced at approximately one-half the cost.*** This new diagnostic, exclusively managed and distributed by InstaCare's subsidiary, will be the sole competing product available on the market. Management anticipates substantial revenue streams and anticipates its market share to reach 7-10% by the end of 2012. The at-home diagnostic testing market is currently estimated to exceed $20 billion globally in 2011 (more than $10 billion in the U.S.). This market has grown historically at rates in excess of 25% per year.

***"This product is ideally suited for our business, as we will market Genstrip using strategies and tactics similar to the generic drug industry as we exploit the established diagnostic platform,"*** Mr. Berman continued. ***"The platform manufacturer has spent considerable resources to create a razor/razor blade model with a high-value, moderate-cost consumable. We will leverage this effort and the installed base to sell and distribute a much lower-cost consumable for this market, and we have also added exclusive international distribution rights as well as entry into domestic direct to patient (mail order) markets.*** This unique product brings state-of-the-art science and a much lower cost structure, and a much higher profit base, estimated to be greater than 200% higher than those margins provided under our earlier agreement with Shasta Technologies, LLC."

4908254v.1

> For more information about InstaCare Corp., Pharma Tech Solutions, Inc., Shasta Genstrip and/or its revolutionary MD@Hand cell phone centric technologies, please visit the InstaCare web site www.instacare.net or www.pharmatechdirect.com, or call the company at (805) 446-2973.

(Emphasis Added).

30. On information and belief, the "platform manufacturer" referred to in the April 18th press release is LifeScan and the "existing diagnostic provided by the platform manufacturer" is the OneTouch® Ultra® test strip.

31. On information and belief, Shasta has designed Shasta Genstrips to be compatible with the OneTouch® Ultra® family of glucose monitors. On information and belief, the process for manufacturing Shasta Genstrips is within the scope of one or more claims of the patents-in-suit. On information and belief, the Defendants offer to sell, sell, or use or threaten to offer to sell, sell, or use Shasta Genstrips within the United States. Plaintiff is entitled to relief for such acts under 35 U.S.C. § 271.

32. On May 24, 2011, InstaCare issued sales guidance regarding Shasta Genstrips, projecting 2011 sales at $41.8 million and 2012 sales at $206.6 million.

33. As will be discussed in more detail, beginning on June 24 2011, LifeScan contacted the Defendants regarding, *inter alia*, the April 18th press release and to seek additional information regarding Shasta Genstrips.

34. On June 24, 2011, LifeScan sent a letter to InstaCare with copies to Shasta and Conductive. A copy of the letter is attached as Exhibit D.

35. In the letter, LifeScan expressed its concerns about the Defendants' activities in light of the April 18th press release including its belief that those activities constitute infringement of various LifeScan patents:

> LifeScan is also aware that Shasta Technologies, LLC ("Shasta") has approached at least one authorized distributor of LifeScan products seeking to enlist that entity as a distributor of Shasta Genstrips. It appears from the press release and Shasta's activities that the Shasta Genstrip will be marketed for use with LifeScan's

4908254v.1

> meters. LifeScan believes that it is likely that the current and future activities of Shasta in manufacturing, selling and offering for sale the Shasta Genstrip constitute infringement of certain United States patents owned by LifeScan relating to test strips and methods of their use and manufacture including U.S. Patent Nos. 5,708,247; 5,951,836; 6,241,862; 7,112,265; 7,250,105 and 7,462,265.

36.     On information and belief, Shasta Genstrips were not yet on the market. As a result, LifeScan was not able to purchase them in order to perform tests to determine how the strips were made. Because of this lack of information, LifeScan sought manufacturing information and samples from Defendants that would allow it to make a complete analysis to determine whether or not Shasta Genstrips infringed LifeScan's patents:

> In order to properly evaluate these possible claims, LifeScan requests that Shasta provide LifeScan with fifteen samples of each model of the Shasta Genstrip for analysis along with documents sufficient to fully describe each step involved in the manufacture of each model of the Shasta Genstrip. LifeScan requests that Shasta provide these samples and documents or otherwise respond to this letter within 14 days of the date of this letter.

37.     On July 1, 2011 counsel for defendants InstaCare and PharmaTech responded to LifeScan's letter. A copy of the response is attached as Exhibit E.

38.     The July 1 response contained a material false statement and was otherwise evasive. This response further reinforced LifeScan's belief that the manufacture of Shasta Genstrips would infringe the patents-in-suit.

39.     The July 1 response indicated that InstaCare and PharmaTech "do not possess the information [LifeScan is] seeking."

40.     On information and belief, that statement is not true. According to its Financial Guidance Memo for shareholders, InstaCare has "[c]omplete control of the Genstrip diabetes diagnostic product including regulatory responsibility with the U.S. FDA." http://www.instacare.net/documents/Walling_110526Guidance.pdf (A copy is attached as Exhibit F). Given this responsibility, it is unlikely that InstaCare would lack any information relating to the design or method of manufacture of Shasta Genstrips. Such information would be

necessary to prepare regulatory filings in the United States and elsewhere. *See* 21 U.S.C. § 807.92(a)(5) (510(k) summary requires a description of "the significant physical and performance characteristics of the device, such as device design, material used, and physical properties"); 21 U.S.C. § 820.30 (requiring that manufacturers of any class II or class III device "establish and maintain procedures to control the design of the device in order to ensure that specified design requirements are met").

41. The July 1 response was also evasive on several other topics.

42. For example, InstaCare and PharmaTech neither denied nor confirmed that Shasta Genstrips were designed to be used with the OneTouch® meters. Instead, InstaCare and PharmaTech indicated that they never made any "public statements concerning the use of the Genstrip product with LifeScan meters."

43. Similarly, the July 1 response was evasive, if not misleading, about when Shasta Genstrips would be manufactured for commercial sale. According to the letter, such manufacture would not commence until FDA approval: "The Shasta Genstrip has not yet received approval from the Food and Drug Administration. Until such time as approval is received, the Genstrip will not be manufactured for sale."

44. However, that statement was inconsistent with information contained on InstaCare's website which indicated that InstaCare anticipated selling Shasta Genstrips this year. According to InstaCare's website, InstaCare anticipates making over $40 million in GenStrip commercial sales in 2011, either within the Unites States or outside of the United States. Such sales outside the United States do not require FDA approval.

45. Finally, despite LifeScan having requested sample Shasta Genstrips, InstaCare and PharmaTech ignored the request and did not provide any samples.

46. On July 15, 2011, Lifescan responded to the July 1 letter, with copies sent to Shasta and Conductive. A copy of that response is attached as Exhibit G.

47. In its July 15 letter, Lifescan responded to each of the points raised by InstaCare and PharmaTech. For example, in the July 1 letter, InstaCare raised concerns about providing the requested information to LifeScan, a "potential competitor." To alleviate that

1 concern, LifeScan offered to enter into a confidentiality agreement.

2       48.    In addition, LifeScan repeated its request for samples and information on how Shasta Genstrips were made: "LifeScan renews its request that InstaCare provide LifeScan with fifteen samples of each model of the Shasta Genstrip for analysis, along with documents sufficient to fully describe each step involved in the manufacture of each model of the Shasta Genstrip. LifeScan requests that InstaCare provide these samples and documents or otherwise respond to this letter within 14 days of the date of this letter."

      49.    Additionally, on July 15, LifeScan sent a letter directly to Shasta. A copy of this letter is attached as Exhibit H.

      50.    On July 21, 2011, InstaCare and PharmaTech responded to the July 15 letter by indicating that their "position remained unchanged." A copy of that letter is attached as Exhibit I.

      51.    Neither Shasta nor Conductive ever responded to Life Scan's July 15 letters.

      52.    On September 1, 2011, LifeScan wrote to the Defendants and repeated the request for manufacturing information and samples. Copies of the letters are attached as Exhibits J, K, and L. In the September 1 letters, LifeScan informed the Defendants that if they continued to remain silent and/or refuse to produce the requested information and samples, the "only reasonable inference" is that the Defendants recognize that "that its activities constitute infringement of LifeScan's patents and that it is attempting to hide them."

      53.    None of the Defendants provided the requested information and/or samples in response to LifeScan's September 1 letters.

      54.    The Defendants' responses to LifeScan's letters—whether misleading statements, evasions or outright nonresponses—have further reinforced Plainitffs' beliefs that the manufacture of Shasta Genstrips would infringe the patents-in-suit.

      55.    LifeScan timely gave the Defendants actual notice of the patents-in-suit and from that date has in good faith sought from the Defendants information that would assist LifeScan in confirming whether the Shasta Genstrip is within the lawful scope of one or more

- 10 -     COMPLAINT

4908254v.1

1 claims of, *inter alia*, the patents-in-suit. None of the Defendants has provided such information.

2     56. LifeScan has requested that the Defendants provide LifeScan with samples of each model of the Shasta Genstrip. None of the Defendants has provided LifeScan with samples of the Shasta Genstrip.

    57. LifeScan provided the Defendants with a written notification of information sufficient to persuade a reasonable person that it is likely that the Shasta Genstrip was made by a process patented in the United States.

    58. On information and belief, the Defendants have actual knowledge of information sufficient to persuade a reasonable person that it is likely that the Shasta Genstrip was made by a process patented in the United States.

    59. In the absence of information relating to the Shasta Genstrip manufacture process and samples of the Shasta Genstrip, Plaintiff resorts to the judicial process and the aid of discovery to obtain under appropriate judicial safeguards such information as is required to confirm their belief and to present to the Court evidence that the Defendants infringe one or more claims of the patents-in-suit.

## COUNT I

### Declaratory Judgment Action for Infringement of the '247 Patent

    60. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 59 hereof, as if fully set forth herein.

    61. On information and belief, the Defendants have taken substantial steps in preparation to make Shasta Genstrips or have Shasta Genstrips made, including, but not limited to, designing the Shasta Genstrip, applying for FDA approval of the Shasta Genstrip, arranging for distribution of the Shasta Genstrip, and stockpiling Shasta Genstrips in the United States for distribution upon regulatory approval.

    62. On May 24, 2011, InstaCare issued a Sales Guidance regarding the Shasta Genstrip projecting sales of the Shasta Genstrip in 2011 of $41.8 million. Under information and belief, the Defendants' entrance into the test strip market is imminent.

- 11 -      COMPLAINT

4908254v.1

63. On information and belief, Shasta, InstaCare, and PharmaTech have actively induced infringement and threaten to actively induce infringement one or more claims of the '247 patent, either literally or under the doctrine of equivalents, by having Shasta Genstrips made for distribution within the United States.

64. The Defendants' activities along with InstaCare's sales projections have placed LifeScan under a reasonable apprehension that the Defendants will infringe and/or actively induce infringement of the '247 patent. There now exists a justiciable case and controversy for adjudication by the Court.

65. The aforesaid acts, plans, and intentions of the Defendants give rise to an actual existing controversy of which this Court has jurisdiction between Plaintiff and the Defendants. Plaintiff seeks relief against the Defendants' acts of threatened infringement to avoid irreparable injury which would result if Plaintiff waited until commencement of full scale commercial marketing of the Shasta Genstrip.

66. On information and belief, the acts of infringement of the patents-in-suit by the Defendants, unless promptly enjoined, will cause irreparable loss, injury, and damage to Plaintiff and will prevent Plaintiff from enjoying the exclusive rights granted by the '247 patent for the full remaining term.

67. On information and belief, the Defendants infringement of the '247 patent has been willful.

## COUNT II

### Declaratory Judgment Action for Infringement of the '862 Patent

68. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 67 hereof, as if fully set forth herein.

69. On information and belief, the Defendants have taken substantial steps in preparation to make Shasta Genstrips or have Shasta Genstrips made, including, but not limited to designing the Shasta Genstrip, applying for FDA approval of the Shasta Genstrip, arranging for distribution of the Shasta Genstrip, and stockpiling Shasta Genstrips in the United States for distribution upon regulatory approval.

4908254v.1

70. On May 24, 2011, InstaCare issued a Sales Guidance regarding the Shasta Genstrip projecting sales of the Shasta Genstrip in 2011 of $41.8 million. Under information and belief, the Defendants' entrance into the test strip market is imminent.

71. On information and belief, Shasta, InstaCare and PharmaTech have actively induced infringement and threaten to actively induce infringement one or more claims of the '247 patent, either literally or under the doctrine of equivalents, by having Shasta Genstrips made for distribution within the United States.

72. The Defendants' activities along with InstaCare's sales projections have placed LifeScan under a reasonable apprehension that the Defendants will infringe and/or actively induce infringement of the '862 patent. There now exists a justiciable case and controversy for adjudication by the Court.

73. The aforesaid acts, plans, and intentions of the Defendants give rise to an actual existing controversy of which this Court has jurisdiction between Plaintiff and the Defendants. Plaintiff seeks relief against the Defendants' acts of threatened infringement to avoid irreparable injury which would result if Plaintiff waited until commencement of full scale commercial marketing of the Shasta Genstrip.

74. On information and belief, the acts of infringement of the patents-in-suit by the Defendants, unless promptly enjoined, will cause irreparable loss, injury, and damage to Plaintiff and will prevent Plaintiff from enjoying the exclusive rights granted by the '862 patent for the full remaining term.

75. On information and belief, the Defendants infringement of the '862 patent has been willful.

**PRAYER**

WHEREFORE, Plaintiff demands judgment as follows and respectfully pray that this Court:

(a) An Order that the Defendants provide the information and samples requested in the June 24 and July 15, 2011 letters;

4908254v.1

(b) A declaration that the manufacture of the Shasta Genstrips by the Defendants infringes—either directly or by inducement—the claims of the '247 and '862 patents

(c) An Order preliminarily and permanently enjoining each of the Defendants and their officers, agents, employees, and all others in concert or participation with them from further acts of infringement of the patents-in-suit;

(d) An Order adjudging and decreeing that this case is exceptional;

(e) An award of Plaintiff's damages for infringement, with interest and trebled, pursuant to 35 U.S.C. § 284

(f) An award to Plaintiff of its costs and expenses of this action as allowed by law, together with its reasonable attorneys' fees for bringing and prosecuting this action; and

(g) Such other and further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

LifeScan Scotland demands a trial by jury on each of their claims for relief triable before a jury.

Dated: September 9, 2011         O'MELVENY & MYERS LLP

By: _Roberta H. Vespremi /BMR_
    Roberta H. Vespremi

2765 Sand Hill Road
Menlo Park, California 94025
Telephone: (650) 473-2600
Facsimile: (650) 473-2601
E-Mail: rvespremi@omm.com

RICHARD B. GOETZ
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
E-Mail: rgoetz@omm.com

Attorneys for Plaintiff
LIFESCAN SCOTLAND, LTD.

4908254v.1