RICHARD GOETZ (S.B. #115666)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:    (213) 430-6000
Facsimile:    (213) 430-6407
E-Mail:       rgoetz@omm.com

ROBERTA VESPREMI (S.B. #225067)
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, CA  94025
Telephone:    (650) 473-2600
Facsimile:    (650) 473-2601
E-Mail:       rvespremi@omm.com

Attorneys for Plaintiff
LIFESCAN SCOTLAND, LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| LIFESCAN SCOTLAND, LTD., | **Case No. CV11-04494-MEJ** |
| Plaintiff, | **NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY AND TO MODIFY THE SCHEDULING ORDER** |
| v. | |
| SHASTA TECHNOLOGIES, LLC, INSTACARE CORP., PHARMATECH SOLUTIONS, INC., and CONDUCTIVE TECHNOLOGIES, INC., | |
| Defendants. | Date:  November 10, 2011<br>Time: 10 a.m.<br>Place: Courtroom B<br>Judge:  Hon. Maria-Elena James |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION.................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.........................................1

FACTUAL BACKGROUND....................................................................................2

      A.    The Relevant Technology .....................................................................2

      B.    LifeScan Scotland's Futile Attempts to Obtain Information from the Defendants..................................................................................3

ARGUMENT............................................................................................................7

CONCLUSION.......................................................................................................11

COMPLAINT

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4       *Apple Inc. v. Samsung Elec. Co., LTD.*,
             No. 11-CV-01846-LHK, 2011 WL 1938154 (N.D. Cal. May 18, 2011).............................. 7, 9
5
         *Hoffman-La Roche, Inc. v. Invamed Inc.*,
6             213 F.3d 1359 (Fed. Cir. 2000) .............................................................................................. 6
7       *Semitool, Inc. v. Tokyo Electron Am., Inc.*,
             208 F.R.D. 273 (N.D. Cal. 2002) .............................................................................. 7, 8, 9, 10
8

9       OTHER AUTHORITIES

10      Fed. R. Civ. P. 11 ..................................................................................................................... 6

11      Fed. R. Civ. P. 16(b) .............................................................................................................. 10

12      Fed. R. Civ. P. 26(d) ............................................................................................................ 1, 8

13      Fed. R. Civ. P. 26(d)(1) ........................................................................................................... 7

14      Fed. R. Civ. P. 26(f) .......................................................................................................... 1, 7, 8

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE, that on November 10, 2011 at 10:00 a.m., or as soon as this matter may be heard, before the Honorable Maria-Elena James, at the United District Court for the Northern District of California, San Francisco Courthouse, Courtroom B - 15th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff LifeScan Scotland, Ltd. ("LifeScan Scotland") will move the Court for an Order permitting discovery in advance of the Rule 26(f) conference and to modify the scheduling order under Federal Rule of Civil Procedure 26(d) and Northern District of California Patent Local Rule 3.

LifeScan Scotland seeks expedited discovery in order to determine definitively which of its patents are infringed, consequently expediting any potential amendment of its complaint, facilitating a comprehensive case management conference, and allowing it to comply fully with its disclosure obligations under Northern District of California Patent Local Rule 3.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Roberta H. Vespremi in support of Plaintiff's Motion for Expedited Discovery and to Modify the Scheduling Order, the pleadings and papers filed herein, and upon such other matters as may be presented to the Court at the time of hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

LifeScan Scotland moves this Court to allow it to take limited expedited discovery of defendants Shasta Technologies, LLC ("Shasta"), InstaCare Corp. ("InstaCare"), PharmaTech Solutions, Inc. ("PharmaTech") and Conductive Technologies, Inc. ("Conductive") (collectively "Defendants") regarding products that Defendants intend to introduce imminently both outside the United States and/or within the United States, the manufacture of which would infringe LifeScan Scotland's patents. LifeScan Scotland has repeatedly attempted to obtain this information from Defendants without resorting to judicial intervention, but Defendants have repeatedly refused to produce the requested information. LifeScan Scotland needs the requested information to comply with its obligations under this Court's patent rules regarding infringement

1   contentions.  Because the requests are narrowly tailored, the production of the requested materials

2   will not prejudice Defendants.

3          Accordingly, LifeScan Scotland requests an order requiring the Defendants to produce:

4   (i) samples of the glucose test strips that they are preparing to introduce in the United States,

5   (ii) documents relating to the manufacture and design of their test strips and (iii) documents

6   relating to dealings between the Defendants.  The requested discovery would allow LifeScan

7   Scotland to assess the extent to which Defendants' soon-to-be-released products will infringe

8   LifeScan Scotland's intellectual property rights before the Defendants' products become

9   entrenched in the marketplace.

10         Further, because the requested product samples and documents are necessary for LifeScan

11  Scotland to fully comply with this Court's Patent Rules 3-1 and 3-2, and because an analysis of

12  the samples and documents could lead LifeScan Scotland to narrow the issues and/or assert

13  additional patents against Defendants, LifeScan Scotland also requests that the Case Management

14  Conference be adjourned to a date no earlier than 90 days from the receipt of the requested

15  discovery.

16                                   **FACTUAL BACKGROUND**

17  **A.     The Relevant Technology**

18         LifeScan Scotland commenced this case on September 10, 2011.  In this case, LifeScan

19  Scotland accuses Defendants of infringing LifeScan Scotland's U.S. Patent Nos. 5,708,247 (the

20  '247 patent) and 6,241,862 (the '862 patent).  The inventions at issue involve methods for

21  manufacturing disposable blood glucose testing strips that are used by persons who suffer from

22  diabetes.  LifeScan, Inc. ("LifeScan") which is the indirect parent of LifeScan Scotland, markets

23  OneTouch® Ultra® glucose monitoring systems.  OneTouch Ultra glucose monitoring systems

24  are the leader in the worldwide market for glucose monitoring systems; they practice the patents

25  that are asserted in this case.

26         Glucose monitoring systems, such as the OneTouch Ultra system, are used by diabetics to

27  check their blood glucose levels.  Testing blood glucose levels is one of the most important things

28  that diabetics can do to ensure their health and to prevent long term complications.  Testing

NOT., MOT. & MEMO ISO MOT. FOR EXPEDITED
DISCOVERY AND TO MODIFY SCHEDULING
ORDER CASE NO. CV11-04494-MEJ

1   allows the person to see what his blood glucose level is and assists in the planning of meals and

2   activities.  In addition, blood glucose testing is useful to detect either hypoglycemia (low blood

3   glucose) or hyperglycemia (high blood glucose); which if left untreated can lead to life-

4   threatening complications.

5        Many diabetics use blood glucose meters to measure their blood glucose levels.  LifeScan

6   Scotland and its affiliates make and sell such a system, the OneTouch series of products.  In using

7   the OneTouch system, a single use, disposable test strip is placed in the OneTouch meter.  A

8   sample of blood is placed on the strip in a designated location.  Based on careful calibrations, the

9   meter is able to determine the blood glucose level in the sample by measuring the flow of

10  electrical current.  Properly using the OneTouch system, the person may determine if his or her

11  blood glucose level is within a satisfactory range or if some treatment is required to increase or

12  decrease the level.

13       Several different companies make different blood glucose monitoring systems.  However,

14  LifeScan Scotland and its affiliates have not authorized any other company to make or sell a test

15  strip for use in the OneTouch system.

16  **B.   LifeScan Scotland's Futile Attempts to Obtain Information from the Defendants**

17       The Complaint alleges that Defendants' manufacture of the "Shasta Genstrip" glucose test

18  strip infringes the '247 and '862 patents.  It is believed that Defendants' Shasta Genstrip test

19  strips are designed to work with LifeScan's OneTouch meters (D.E. 1 at ¶ 23).

20       The Complaint describes the events that lead LifeScan Scotland to believe that Defendants

21  intend to or do infringe LifeScan Scotland's patents and the steps that LifeScan has taken in an

22  effort to obtain the information sought by this motion without burdening the Court.  As described

23  in the Complaint (D.E. 1 at ¶¶ 28-30), on April 18, 2011, InstaCare issued a press release about an

24  agreement between the InstaCare subsidiary PharmaTech and Shasta regarding a product known

25  as the "Shasta Genstrip."  (D.E. 1 at Ex. C.)  The press release states that the Shasta Genstrip is

26  "targeted at an existing, FDA-approved platform for in-home diabetes testing, the market leader

27  in the $20 billion worldwide market."  (*Id.*)  This statement plainly refers to LifeScan's market

28  leading OneTouch platform.  The press release further states that Defendants will "market

NOT., MOT. & MEMO ISO MOT. FOR EXPEDITED
DISCOVERY AND TO MODIFY SCHEDULING
ORDER CASE NO. CV11-04494-MEJ

1   Genstrip using strategies and tactics similar to the generic drug industry as we *exploit* the

2   established diagnostic platform." (*Id*. (emphasis added).) It also reveals Defendants' intention to

3   take advantage of the "considerable resources" that the platform manufacturer (*i.e.*, LifeScan)

4   expended to enter the market by distributing a "much-lower cost consumable." (*Id*.)

5   On May 24, 2011, InstaCare issued a Financial Guidance Memo for its shareholders.

6   (D.E. 1 at Ex. F.) The Memo states that InstaCare forecasts sales at $41.8 million between July

7   and December of 2011 and sales at $206.6 million in 2012. It further explains that InstaCare

8   believes it will garner "as much as $600 million (5%) of the U.S. glucose monitoring market

9   within a few years, beyond the 2011-2012 forecasts already cited." (*Id*.) And, it announces that

10  InstaCare has "[w]orldwide distribution rights" and "[c]omplete control of the Genstrip diabetes

11  diagnostic product including regulatory responsibility with the U.S. FDA, Medicare and

12  Medicaid, and in Europe CE Mark responsibility." (*Id*.)

13  Based on this and other information, LifeScan and LifeScan Scotland became concerned

14  that Defendants were about to launch the Shasta Genstrip, and that Defendants were likely

15  infringing or about to infringe LifeScan Scotland's patents. During the summer of 2011, LifeScan

16  repeatedly wrote to Defendants, requesting the product samples and documents that are the

17  subject of this motion. Defendants refused to provide the information requested.

18  On June 24, 2011, LifeScan sent a letter to InstaCare with copies to Shasta and

19  Conductive expressing LifeScan's belief that the Defendants' activities constitute infringement of

20  various LifeScan and LifeScan Scotland patents. (D.E. 1 at Ex. D.) The Shasta Genstrip was not

21  yet on the market, and therefore LifeScan and LifeScan Scotland could not purchase the Shasta

22  Genstrip in order to perform tests to determine if the Shasta Genstrip would infringe their patents.

23  Therefore, LifeScan requested that InstaCare provide it with fifteen samples of each model of the

24  Shasta Genstrip along with documents sufficient to describe each step involved in the products'

25  manufacture. (*Id*.)

26  By letter dated July 1, 2011 (D.E. 1 at Ex. E), InstaCare and PharmaTech asserted, through

27  counsel, that they "do[] not possess the information [LifeScan is] seeking." (*Id*.) This response

28  was directly contrary to the statements in InstaCare's Financial Guidance Memo, which indicated

1   that InstaCare had "[c]omplete control of the Genstrip diagnostic product inducing regulatory

2   responsibility with the U.S. FDA."  (D.E. 1 at Ex. F.)

3         The July 1, 2011 letter was evasive on other topics as well.  For instance, rather than

4   denying or confirming that the Shasta Genstrips were designed for use with the OneTouch meter,

5   InstaCare and PharmaTech simply indicated that they have never made any "public statements

6   concerning the use of the Genstrip product with LifeScan meters."  (D.E. 1 at Ex. E.)  Further, the

7   letter stated that "[t]he Shasta Genstrip has not yet received approval from the Food and Drug

8   Administration.  Until such time as approval is received, the Genstrip will not be manufactured

9   for sale."  (*Id*.)  This was, however, contrary to InstaCare's statement in the Financial Guidance

10  Memo predicting sales of over $40 million in 2011.  Finally, InstaCare and PharmaTech wholly

11  ignored LifeScan's request for product samples.

12        LifeScan responded by letter dated July 15, 2011.  (D.E. 1 at Ex. G.)  To alleviate

13  InstaCare's stated concern about providing information concerning the Shasta Genstrip to "a

14  potential competitor," LifeScan offered to enter into a confidentiality agreement.  LifeScan also

15  renewed its request for "fifteen samples of each model of the Shasta Genstrip [and] documents

16  sufficient to fully describe each step involved in the manufacture of each model of the Shasta

17  Genstrip."  (*Id*.)  In addition, LifeScan sent a letter directly to Shasta—with copies to InstaCare,

18  PharmaTech and Conductive—and requested the same information.  (D.E. 1 at Ex. H.)

19        On July 21, 2011, counsel for InstaCare and PharmTech indicated that their position

20  remained unchanged.  Neither Shasta nor Conductive ever responded to LifeScan's July 15

21  letters.  (D.E. 1 at Ex. I.)

22        On September 1, 2011, LifeScan wrote to each of the Defendants and repeated its request

23  for manufacturing information and samples.  (D.E. 1 at Exs. J, K, L.)  LifeScan also informed the

24  Defendants that if they continued to remain silent and/or refuse to produce the requested

25  information and samples, "the only reasonable inference" is that each of the Defendants recognize

26  "that its activities constitute infringement of LifeScan's patents and that it is attempting to hide

27  them."  By September 10, 2011 LifeScan had not received a response from any of the Defendants.

28

NOT., MOT. & MEMO ISO MOT. FOR EXPEDITED
DISCOVERY AND TO MODIFY SCHEDULING
ORDER CASE NO. CV11-04494-MEJ

1   On September 10, 2011, LifeScan Scotland filed this suit.[1]  On September 12, LifeScan

2   received a letter from counsel for InstaCare and PharmaTech dated September 6 stating that

3   InstaCare and PharmaTech did not intend to provide LifeScan with the requested information

4   because of "[their] desire to keep [their] 'trade secrets' secret." (Declaration of Roberta H.

5   Vespremi ("Vespremi Decl."), Ex. A.)  Also on September 12, LifeScan received a letter from

6   Conductive dated September 6, stating that it is "not at liberty to provide samples or information

7   relating to any of our customers unless they expressly permit us to do so." (Vespremi Decl., Ex.

8   B.)  Notably, Conductive did not deny that it manufactures the Shasta Genstrip, possesses

9   information related to that product and has a relationship with InstaCare, PharmaTech and Shasta.

10  LifeScan has not still received any response from Shasta.

11  On September 13, 2011, LifeScan again wrote to each of the Defendants and included a

12  courtesy copy of the Complaint and again repeated its request for samples of the Shasta Genstrip

13  and documents related to its manufacture.  (Vespremi Decl., Exs. C, D and E.)  Once again,

14  neither Shasta nor Conductive responded to LifeScan's letters and none of the Defendants

15  produced any documents or samples.

16  A copy of the Complaint and of this motion were served on Defendants' registered service

17  agents on September 23.  (Vespremi Decl. ¶ 3.)  Counsel for Defendants have not yet appeared.

18  Although Defendants previously have refused to provide the information that is the subject of this

19  motion, LifeScan Scotland has not yet been able to confer with Defendants regarding the

20  discovery requests contained herein since the filing of this case.  Once Defendants appear through

21  counsel, LifeScan Scotland will meet and confer with Defendants' counsel regarding whether

22  they will agree to provide the requested documents and product samples on an expedited basis.

23  _____

24  [1] Despite not having samples, LifeScan Scotland satisfied its obligations for a pre-suit
    investigation under Fed. R. Civ. P. 11.  Because of the difficulty in learning precisely how a
    product is made, the Federal Circuit has held that when asserting a patent claim for a

25  manufacturing process—such as the claims that LifeScan Scotland is currently asserting—Rule
    11 is satisfied by reasonable attempts to learn the manufacturing process.  *Hoffman-La Roche,*

26  *Inc. v. Invamed Inc.*, 213 F.3d 1359, 1363-65 (Fed. Cir. 2000).  In such circumstances, the party
    can turn to the Court for the use of judicial process and the aid of discovery to learn the actual

27  manufacturing process and determine whether or not there is patent infringement.  *Id.*  In
    *Hoffman-La Roche*, the Court found that Rule 11 was satisfied when the plaintiff requested the

28  defendant to provide information on the manufacturing process, but the defendants declined to
    provide that information, which is exactly what Defendants have done in this case.

NOT., MOT. & MEMO ISO MOT. FOR EXPEDITED
DISCOVERY AND TO MODIFY SCHEDULING
ORDER CASE NO. CV11-04494-MEJ

1    LifeScan Scotland will report to the Court on the outcome of those discussions as soon as
2    practicable.

3          Currently, the Rule 26(f) Conference is scheduled for December 22, 2011.  Under this
4    Court's Patent Rules, LifeScan Scotland's infringement contentions are due fourteen days after
5    that.  LifeScan Scotland is unable to complete the required infringement contentions without the
6    information it requests herein on an expedited basis.

7                                        **ARGUMENT**

8          Generally, "[a] party may not seek discovery from any source before the parties have
9    conferred as required by Rule 26(f), except . . . by court order."  Fed. R. Civ. P. 26(d)(1).  This
10   Court, and the Ninth Circuit, apply a "good cause" standard in deciding whether to permit
11   discovery prior to a Rule 26(f) conference.  *Apple Inc. v. Samsung Elec. Co., LTD.*, No. 11-CV-
12   01846-LHK, 2011 WL 1938154, at *1 (N.D. Cal. May 18, 2011) (citing cases).  "'Good cause
13   may be found where the need for expedited discovery, in consideration of the administration of
14   justice, outweighs the prejudice to the responding party.'"  *Id.*  (quoting *Semitool, Inc. v. Tokyo*
15   *Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)).  Moreover, "'courts have recognized
16   that good cause is frequently found in cases involving claims of infringement and unfair
17   competition.'"  *Apple*, 2011 WL 1938154, at *2 (quoting *Semitool*, 208 F.R.D. at 276.).

18         In *Semitool*, the plaintiff sought early discovery so that it could determine "which, if any,
19   of its other patents are infringed . . . and permit it to comply with its disclosure obligation under
20   Northern District of California Patent Local Rule 3."  *Semitool*, 208 F.R.D. at 276.  In considering
21   whether there was good cause for expedited discovery, this Court considered a variety of factors,
22   including, (1) the purpose of the requested early discovery; (2) the breadth of the discovery
23   requests; (3) the burden on the defendants to comply with the requests; (4) whether the defendants
24   are able to respond to the requests in an expedited manner and (5) how far in advance of the
25   typical discovery process the request was made.  *See id.* at 276-77.  Because the discovery was
26   limited in nature, would be produced in the normal course of discovery, had been previously
27   asked for and would allow plaintiffs to fully comply with its obligation under Patent Rule 3, this

28

1    Court ordered the defendant to produce the requested documents in twenty days. For the same

2    reasons, LifeScan Scotland requests similar expedited discovery in this case.

3        The first factor considered in *Semitool* (*i.e.*, the purpose of the requested early discovery,

4    208 F.R.D. at 276-77) weighs in favor of expedited discovery. LifeScan Scotland's request falls

5    squarely in the exception to Rule 26(d) for cases involving claims of infringement. LifeScan

6    Scotland is currently asserting method of manufacturing claims against the Defendants. Although

7    LifeScan Scotland made repeated attempts to learn how the accused Shasta Genstrips are

8    manufactured, *see pages* 3-6, *supra*, Defendants refused to provide the product samples and

9    information requested. LifeScan Scotland needs the requested samples and documents—which

10    are solely in Defendants' possession and not discoverable from public sources—in order to

11    comply with Patent Rule 3.

12        In addition, LifeScan Scotland and its indirect parent LifeScan have other patents and

13    other patent claims directed to glucose monitoring strips. Early production of the requested

14    documents and product samples will allow LifeScan Scotland and, if appropriate, LifeScan, to

15    identify any additional patents that will be asserted in this action. Such early information will

16    allow for an expedited amendment to the Complaint and would provide the ability to identify all

17    issues before the Court during the Rule 26(f) conference.

18        The second factor considered in *Semitool* (the breadth of the requested discovery, 208

19    F.R.D. at 276-77) also weighs in favor of expedited discovery. The discovery LifeScan Scotland

20    requests is limited in scope. Namely, LifeScan Scotland seeks the following:

21

22

23

24

25

26

27

28

1.      200 samples of each model of the Shasta Genstrip.

2.      Documents sufficient to fully describe the method of manufacture of each model of the Shasta Genstrip.

3.      Documents sufficient to show the compatibility of the Shasta Genstrip with the LifeScan OneTouch Ultra line of glucose monitors.

4.      All contracts or agreements among any and or all of the Defendants concerning the Shasta Genstrip, including, but not limited to, those described by the April 18, 2011 press release identified in paragraph 28 of the Complaint, those described by the May 27, 2011 Financial Guidance Memo identified in paragraph 40 of the Complaint, and those concerning any agreements to manufacture the Shasta Genstrip.[2]

These requests are narrowly tailored to the specific issue at hand—to provide LifeScan with specific information that will allow it comply with Patent Rule 3 and to determine if any other patents are infringed. As in *Semitool*, "[t]he request directed to Defendants is narrowly tailored to this benefit. It entails not, e.g., a free ranging deposition for which for which a representative of Defendants may not have had sufficient time or information with which to prepare, but existing documents and a physical inspection." 208 F.R.D. at 277. Importantly, these narrow and targeted requests do not seek all relevant documents in Defendants' possession, custody or control. Instead, LifeScan Scotland only seek documents sufficient to show whether Defendants' products and manufacturing methods infringe LifeScan Scotland's patents.

The third and fourth factors considered in *Semitool* (*i.e.*, the burden on the defendants and whether they are able to respond in an expedited manner, 208 F.R.D. at 276-77) also weigh in favor of expedited discovery. Early discovery will not unduly burden the Defendants and they certainly are capable of responding to these requests in an expedited manner. Defendants are in sole possession of the requested product samples and documents. The samples and documents provide the information the Defendants need to answer the Complaint and providing that same information to LifeScan Scotland entails no additional burden. In fact, the limited discovery that LifeScan Scotland requests, as in *Semitool* and *Apple*, is "core . . . to the underlying case," and is information which "w[ould] be produced in the normal course of discovery." *Semitool*, 208 F.R.D. at 276; *see also Apple*, 2011 WL 1938154, at *2. Because of the narrow scope of the

---

[2] The documents requested in category 4 are necessary for LifeScan Scotland to comply with Patent L. R. 3-1(d) and identify the acts of induced infringement.

1    requested discovery, whatever logistical issues Defendants may encounter in collecting samples

2    of products will be minimal, and certainly outweighed by LifeScan Scotland's need for this

3    information on an expedited basis.

4          Finally, the fifth factor considered in *Semitool* (how far in advance of the typical discovery

5    process the request was made, 208 F.R.D. at 276-77) also weighs in favor of expedited discovery.

6    LifeScan's request comes at a reasonable time.  In the normal course, LifeScan Scotland would be

7    able to serve document requests by December 1, the last date to confer on the discovery plan.

8    (D.E. 3.)  This request is being made less than two months earlier and is necessary in order to

9    ensure production of the responsive documents sufficiently in advance of that December 1 date so

10   that the parties can have meaningful discussions on a discovery plan for all of the asserted

11   patents.  Additionally, the early discovery is necessary for LifeScan Scotland's Patent Rule 3

12   submission, due January 5.

13         Here, as in *Semitool*, this Court should order that the requested discovery be provided

14   within twenty days instead of the thirty days that is customary under the Federal Rules.  208

15   F.R.D. at 277.  Although the documents in *Semitool* were located in Japan, the Court was unable

16   "to see why given current communication technology, Defendants cannot respond quickly to the

17   narrow requests propounded by Plaintiff, especially given that the request hardly comes as a

18   surprise and the Case Management Conference and the attendant disclosures are fast

19   approaching."  *Id.*  In this case, the documents are located within the United States and, for the

20   most part, are documents that LifeScan has been seeking from Defendants since June 2011.

21         Finally, LifeScan Scotland requests that the date of the Rule 16(b) Conference—currently

22   scheduled for December 22, 2011—be moved to a date approximately ninety days after

23   Defendants have produced the requested the samples and documents.  This will allow LifeScan

24   Scotland sufficient time to review the documents and analyze the samples and to determine if it

25   needs to amend the Complaint to either add claims asserting additional patents and/or modify the

26   patents claims asserted in the Complaint.  This adjournment will promote judicial efficiency by

27   allowing the parties and the Court to address all the issues at the Conference without the need to

28   modify a scheduling order at a late date.

1

## <u>CONCLUSION</u>

2     For the foregoing reasons, this Court should allow LifeScan Scotland to serve early

3  discovery requests and should order the Defendants to produce the requested product samples and

4  documents within twenty days.  Further, the Case Management Conference should be adjourned

5  to a date no earlier than 90 days from the receipt of the requested discovery.

6

7  Dated:  October 5, 2011                    O'MELVENY & MYERS LLP

8

9                                            By:_____/s/ Roberta H. Vespremi_____
                                                   Roberta H. Vespremi

10                                           2765 Sand Hill Road
                                             Menlo Park, California  94025
11                                           Telephone:  (650) 473-2600
                                             Facsimile:   (650) 473-2601
12                                           E-Mail:       rvespremi@omm.com

13                                           RICHARD B. GOETZ
                                             O'MELVENY & MYERS LLP
14                                           400 South Hope Street
                                             Los Angeles, California  90071
15                                           Telephone:  (213) 430-6000
                                             Facsimile:   (213) 430-6407
16                                           E-Mail:       rgoetz@omm.com

17                                           Attorneys for Plaintiff
                                             LIFESCAN SCOTLAND, LTD.
18

19

20  OMM_US:70084856.1

21

22

23

24

25

26

27

28

NOT., MOT. & MEMO ISO MOT. FOR EXPEDITED
DISCOVERY AND TO MODIFY SCHEDULING
ORDER CASE NO. CV11-04494-MEJ