WILLIAM RUDY (admitted *pro hac vice*)
wrudy@lathropgage.com
JOHN J. SHAEFFER (SBN 138331)
jshaeffer@lathropgage.com
CAROLE HANDLER (SBN 129381)
chandler@lathropgage.com
LATHROP & GAGE LLP
1888 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 789-4600
Fax: (310) 789-4601
Attorneys for Defendants
Instacare Corp. and Pharmatech Solutions, Inc.

ROBERT P. ANDRIS (SBN 130290)
randris@rmkb.com
LAEL D. ANDARA (SBN 215416)
landara@rmkb.com
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA 94063-2052
Telephone     (650) 364-8200
Facsimile     (650) 780-1701
Attorneys for Defendants
Shasta Technologies, LLC and Conductive Technologies, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

| | |
|---|---|
| LIFESCAN, INC. AND LIFESCAN SCOTLAND, LTD.<br><br>Plaintiff,<br><br>vs.<br><br>SHASTA TECHNOLOGIES, LLC, INSTACARE CORP., PHARMATECH SOLUTIONS, INC. and CONDUCTIVE TECHNOLOGIES, INC.<br><br>Defendants. | CASE No. 5:11-CV-4494 EJD<br><br>**EX PARTE APPLICATION FOR OSC RE CONTEMPT AND FOR FURTHER RELIEF AND SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[REDACTED VERSION]** |

EX PARTE APPLICATION FOR OSC RE CONTEMPT
Case No.: 5:11-CV-4494 EJD

**<u>EX PARTE</u> APPLICATION**

1

2          Defendants Shasta Technologies, LLC, Instacare Corp., Pharmatech Solutions, Inc., and
3 Conductive Technologies, Inc. (collectively "Defendants") will and hereby do respectfully make this
4 *Ex Parte* Application seeking an order to show cause why Lifescan Inc. and Lifescan Scotland, Ltd.
5 ("Lifescan") should not be held in contempt, and for further relief and sanctions. Defendants have
6 just learned that counsel of record for Lifescan has breached the protective order in this case by
7 misusing information designated as Attorney's Eyes Only under that protective order. Lifescan has
8 issued threatening letters to Defendants' customers and former GenStrip retailers (which falsely
9 imply that they are subject to the terms of the Court's preliminary injunction order). Lifescan's
10 contempt has ruptured and otherwise interfered with Defendants' business relationships and has
11 already resulted in severe financial injury beyond the discontinuation of GenStrip sales. Lifescan's
12 actions have unduly damaged the Defendants and Lifescan should be held liable for all costs
13 associated with its contempt.

14          Good cause exists for granting this Application on an *ex parte* basis. Lifescan's brazen
15 contempt has caused Defendants to suffer immediate and irreparable harm. Lifescan's illicit
16 communications with Defendants' customers must stop at once, and in any event before a regularly
17 scheduled motion can be heard. ██████████████████████████████
18 ██████████████████████████████
19 ██████████████████████████████████
20 ██████████████████████████████
21 ██████████████████████████████████  It must be stopped at
22 once.

23          The Court should issue an order to show cause why Lifescan should not be held in contempt,
24 direct Lifescan to reimburse Defendants for the costs and fees incurred in conjunction with
25 Lifescan's contempt, order Lifescan to send letters of retraction and apology to the nonparties they
26 have contacted, restrict Lifescan's access to confidential material absent a showing of good cause for
27 the specific material to the Magistrate, stay the preliminary injunction, at least until the Federal
28 Circuit has an opportunity to rule on Defendants' appeal, and/or terminate the lawsuit altogether.

This request is based upon this Application, the accompanying Memorandum of Points and Authorities, the concurrently-filed Declarations of John Shaeffer and Keith Berman, the complete file and records in this case, and any additional evidence and argument offered before or at the hearing on this matter.

Dated: April 23, 2013　　　　　　　　　LATHROP & GAGE LLP

By: /s/ William Rudy
William Rudy
Attorneys for Defendants
Decision Diagnostics Corp. and Pharmatech Solutions, Inc.

Dated: April 23, 2013　　　　　　　　　ROPERS, MAJESKI, KOHN & BENTLEY

By: /s/ Lael Andara
Robert Andris
Lael Andara
Attorneys for Defendants
Shasta Technologies, LLC and Conductive Technologies, Inc.

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. LIFESCAN VIOLATED ONE COURT ORDER AND MISREPRESENTED THE SCOPE OF ANOTHER TO UNASSOCIATED THIRD PARTIES ............................... 2

    A. Lifescan Demands Sales Information For Use in Briefing on Amount of Bond ................................................................................................................... 2

    B. Lifescan Used the AEO Customer Documents In Violation of a Court's Order ................................................................................................................... 3

    C. Lifescan's Letters Misrepresent the Scope of the Preliminary Injunction .................... 5

III. THE COURT SHOULD HOLD LIFESCAN AND ITS COUNSEL IN CONTEMPT AND FORCE LIFESCAN TO COMPENSATE DEFENDANTS FOR THE DAMAGES SUFFERED AS A RESULT OF ITS CONTEMPT ........................... 7

    A. The Court's Authority to Address the Contempt of its Orders ..................................... 7

    B. Remedies for Contempt: The Court Should Issue Sanctions, Stay the Preliminary Injunction and/or Dismiss the Lawsuit Altogether .................................. 8

IV. CONCLUSION ................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

*3M Innovative Properties Co. v. Avery Dennison Corp.*,
    2006 WL 2735499 (D. Minn. 2006) ................................................................................... 5

*Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*,
    96 F.3d 1390 (Fed. Cir. 1996) ............................................................................................ 6

*Bradford Technologies, Inc. v. NCV Software.com*,
    2013 WL 75772 (N.D. Cal. 2013) ...................................................................................... 9

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ............................................................................................................. 7

*Fair Housing of Marin v. Combs*,
    285 F.3d 899 (9th Cir. 2002) .............................................................................................. 7

*Falstaff Brewing Corp. v. Miller Brewing Corp.*,
    702 F.2d 770 (9th Cir. 1983) .......................................................................................... 7, 9

*Federal Trade Comm'n v. Enforma Natural Prods., Inc.*,
    362 F.3d 1204 (9th Cir 2004) ............................................................................................ 7

*In Chase National Bank v. City of Norwalk*,
    291 U.S. 431 (1934) ........................................................................................................... 6

*In re Crystal Palace Gambling Hall, Inc.*,
    817 F.2d 1361 (9th Cir. 1987) ............................................................................................ 7

*Scott v. Donald*,
    165 U.S. 107 (1897) ........................................................................................................... 6

*Systemic Formulas, Inc. v. Kim*,
    2011 WL 9509 (D. Utah 2011) ................................................................................... 2, 7, 8

*United States v. Kahaluu Constr. Co., Inc.*,
    857 F.2d 600 (9th Cir. 1988) .............................................................................................. 7

*United States v. Sumitomo Marine & Fire Ins.*,
    617 F.2d 1365 (9th Cir. 1980) ............................................................................................ 7

*Versata Software, Inc. v. SAP America, Inc.*,
    2011 WL 401944 (E.D. Texas 2011) ......................................................................... 2, 3, 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Lifescan's conduct constitutes one more (and perhaps, in Lifescan's view, the final and successful) attempt to run Defendants out of business before they ever receive their day in Court. Lifescan misappropriated and published in letters information designated as Attorneys' Eyes Only under the protective order to threaten Defendants' customers (third parties) with litigation and spread misinformation about the scope of this Court's preliminary injunction. Lifescan has upended Defendants' relationship with its customers, none of whom are customers of Lifescan, and has hurt sales that are entirely unrelated to the GenStrip. Lifescan's wholesale disregard of the protective order constitutes a clear case of contempt.

Defendants have a good faith belief that the GenStrip does not infringe Lifescan's '105 Patent. Defendants believe that, had Lifescan not misled the Court regarding the meaning of "proportional" and conflated the concepts of electrical current "generated" and electrical current "measured," a preliminary injunction would never had issued.[1] Nonetheless, in selling the GenStrip, Defendants accepted the risk of potential litigation from Lifescan. Defendants did not, however, accept the risk of deliberate acts to hurt Defendants' unrelated sales. They did not bargain for, and are not fairly subject to, the all-out unlawful assault on Defendants as on-going enterprises that Lifescan has engaged in outside of this litigation.

After successfully suspending GenStrip sales, Lifescan apparently smelled blood in the water and saw an opportunity to end the legal dispute (and Defendants' businesses) outside of the court system. Lifescan went in for the kill and bullied nonparties for associating with Defendants, anticipating that it would finish Defendants, and thereby this litigation, altogether. Lifescan surely would not have stooped to this level, and engaged in this deplorable conduct, if Lifescan thought it would have to answer for its actions. Any accountable litigant who wanted to use protected information would have petitioned the Court to amend the protective order and/or ask that Defendants' customers be named in the preliminary injunction. Lifescan's despicable contempt for

---

[1] *See* Defendants' Claim Construction Brief, Dkt. No. 249.

this Court's orders, the sanctity of protective orders generally and Defendants' confidentiality signals that Lifescan assumed its conduct would push Defendants into bankruptcy, and this case off the Court's calendar.

Protective orders are absolutely essential to modern commercial litigation, as is counsel's respect for the sanctity of those orders. By violating the protective order, Lifescan crossed the bright "yellow line in the middle of the highway," which exists to "avoid[] disaster." *Systemic Formulas, Inc. v. Kim*, 2011 WL 9509, * 2 (D. Utah 2011). These acts have caused Defendants great financial and reputational injury. Lifescan should be forced to bear the expenses associated with its contempt. Lifescan should also be stripped of the equitable, injunctive relief it was recently given by this Court and its lawsuit should be terminated. *Versata Software, Inc. v. SAP America, Inc.*, 2011 WL 401944, * 7 (E.D. Texas 2011) (suspending *permanent* injunction pending appeal where patentee violated protective order). Lifescan's contumacious conduct should not be overlooked as a mere technical violation – it is anything but – and should be seen for what it really is: a complete disregard for legal rules and procedures that happen to interfere with Lifescan's interests at the time.

## II.   LIFESCAN VIOLATED ONE COURT ORDER AND MISREPRESENTED THE SCOPE OF ANOTHER TO UNASSOCIATED THIRD PARTIES

### A.   Lifescan Demands Sales Information For Use in Briefing on Amount of Bond

Lifescan's counsel used a ruse to coerce Defendants into producing purchase orders and invoices and then misused that information in violation of the protective order. In connection with briefing regarding the bond relating to the issuance of a preliminary injunction, which turned primarily on Defendants' anticipated loss of revenue from the imposition of an injunction, Lifescan's counsel repeatedly demanded that Defendants produce sales information. In an email dated March 25, 2013, Lifescan's counsel wrote:

> Thank you for your response. Unfortunately, an answer this Friday would not be acceptable. **We will require a full production of all documents relating to sales and orders of the GenStrip in order to address the reasonable amount of a bond**. Please produce such documents no later than close of business this Wednesday, March 27.

Declaration of John Shaeffer ("Shaeffer Decl."), Ex. "A" (emphasis added).

1
2
3
4
5
6
7
8
9

10        Acting in good faith, and acknowledging the relevance of such information to considerations
11 regarding the appropriate size of bond, Defendants reluctantly produced purchase orders and invoices
12 that identified Defendants' customers.  Shaeffer Decl., ¶ 4.  In short, Defendants showed good faith
13 and complied with the rules and procedures.  Before producing the material, however, Defendants
14 marked the documents HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY in accordance
15 with Paragraph 5.2(a) of the Protective Order.  *Id*.  Defendants understood that the information could
16 not be used outside of the litigation.  Hereinafter, these documents will be referred to as AEO
17 Customer Documents.

18       **B.**    **Lifescan Used the AEO Customer Documents In Violation of a Court's Order**

19       Defendants' hesitation in producing customer information to an aggressive opponent was,
20 ultimately, entirely justified.  One day after the preliminary injunction took effect, Lifescan misused
21 the AEO Customer Documents to send cease and desist letters to non-parties that blatantly
22 misrepresented the effect of the Court's Order.  The letters falsely imply that they (Defendants'
23 customers) were somehow subject to the terms of the preliminary injunction and were required to
24 stop selling GenStrips.  Berman Decl., Exs. "A" and "B."  The letters even attached copies of the
25 Court's Order Granting Plaintiffs' Motion for a Preliminary Injunction.  *Id*.  The letters were signed
26 by Gregory Diskant, counsel of record in this case.  *Id*.; Dkt. No. 24.  Mr. Diskant's letters constitute
27 clear violations of the Protective Order, which severely restrict the use of information that was
28

3

1  designated thereunder, and intentional, tortious interference with Defendants' relationships with its
2  customers.
3        Patent L.R. 2–2 provides that the District's Patent L.R. 2–2 Interim Model Protective Order
4  controls unless the court enters a different protective order.  Here, the parties acknowledged that the
5  Protective Order controlled and stipulated to a modification that is not relevant to this dispute.  Dkt.
6  No. 143.  The Protective Order provides that:

> A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party **in connection with this case only for prosecuting, defending, or attempting to settle this litigation**. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.

Protective Order, ¶ 7.1 (emphasis added).

      Lifescan's use of the AEO Customer Documents constitutes an unprecedented and unabashed breach of the Protective Order.  Writing letters to third party customers – who are decidedly not subject to the terms of the protective order – is not "use . . . in connection with this case only" and in no way involves the "prosecution, defending or attempting to settle this litigation."  Setting aside for a moment the fact that Lifescan's letters were pure obfuscation (*see* Section II(C), *infra*), its decision to contact Defendants' customers through protected information received in discovery, and in another instance a large retailer to whom Defendants act as a supplier, in no way reflects an effort to prosecute "*this litigation*."  Rather, the letters contemplate Lifescan bringing new infringement lawsuits against Defendants' competitors, and are contumacious.  In producing the documents, Defendants understood that they would be used only within the framework of the Protective Order.  Defendants did not bargain for Lifescan using the documents to threaten Defendants' customers and to tortiously interfere with Defendants' business relationships.

      No rational litigant, wary of answering for its conduct, would conduct themselves as Lifescan did here.  A rational patentee would have moved to amend the protective order or would have sought to add the nonparties' names to the preliminary injunction.  *See Murata Manufacturing Co., Ltd., Bel Fuse, Inc.*, 234 F.R.D. 175, 178, 184 (E.D. Ill. 2006) (patentee unsuccessfully moved to vacate the protective order to contact the accused infringers customers where "there was a significant risk that

1 [the accused infringer's] business relationships would be disrupted"); *3M Innovative Properties Co.*
2 *v. Avery Dennison Corp.*, 2006 WL 2735499 (D. Minn. 2006) (adding infringer's distributors to the
3 injunction where they were "aiding and abetting [the infringer's ] efforts to avoid the impact of the
4 Injunction"). There are numerous avenues Lifescan could have availed itself of that would not have
5 placed it in contempt. No doubt that Lifescan would have used those avenues, and avoided charges
6 of contempt, if its concerns were legitimate and if its mission was not to destroy its competitors.

7 ████████████████████████████████████████████████████
8 ████████████████████████████████████████████████████████
9 ████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████
14 ██████████████████████████████

15 Lifescan's conduct in this case exemplifies an established pattern and practice of misusing
16 information marked confidential in one litigation to further its interests in another. Berman Decl., ¶
17 8. By way of example, Lifescan brought an action against another diabetes test strip distributor,
18 Novex America, in the United States District Court for the Southern District of New York. *Id*. As is
19 the case here, Lifescan was represented by the firm Patterson Belknap Webb & Tyler LLP. Lifescan
20 convinced the judge in that case to have the Novex's records seized and sealed. *Id*. Later, in yet
21 another lawsuit (involving Lifescan's parent company, Johnson & Johnson, against a drug store),
22 Johnson & Johnson introduced the sealed Novex business records. *Id*. While Lifescan and its parent
23 Johnson & Johnson constitute an enormous multinational conglomerate, they do not have carte
24 blanche to impose their will. They need to act in accordance with court orders.

25   **C.**   **Lifescan's Letters Misrepresent the Scope of the Preliminary Injunction**
26 Lifescan knows well that the Court's preliminary injunction does not apply to Defendants'
27 customers and/or retailers with left over GenStrip stock. Lifescan's letters coyly do not explicitly
28 state otherwise. Rather, Lifescan's letters discuss the preliminary injunction at some length and

attach a copy of the Court's Order – very much implying that the injunction does, in fact, prohibit Defendants' third party customers from liquidating their existing supply of GenStrips.

Assertions that Defendants' *customers* fall within the scope of the Court's preliminary injunction are legally untenable. As Lifescan assuredly knew before sending the letters, non-parties can only be subjected to a preliminary injunction where they aid and abet a party's violation of the injunction or are otherwise an agent or representative of a party. *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1395 (Fed. Cir. 1996); *see also Scott v. Donald*, 165 U.S. 107, 117 (1897) ("The decree is also objectionable because it enjoins persons not parties to the suit."); *In Chase National Bank v. City of Norwalk*, 291 U.S. 431, 436 (1934) (holding that an injunction that purported to control anyone who received notice of its terms was "clearly erroneous"). As the Federal Circuit noted in *Additive Controls*, "[h]aving a relationship to an enjoined party of the sort set forth in Rule 65(d) exposes a non-party to contempt for assisting the party to violate the injunction, but does not justify granting injunctive relief against the non-party in its separate capacity." 96 F.3d at 1395-96.

Lifescan itself has argued to this Court that the preliminary injunction did not cover Defendants' customers. In connection with the bond briefing, Lifescan noted that Defendants "ma[de] no claim for recall costs, **as the Court has not ordered a recall**." Response to Bond Brief, Dkt. No. 269, at 3:8-9 (emphasis added). Lifescan's duplicity, and its transparent, punitive effort to damage Defendants' relationships with their customers, cannot be countenanced.

Defendants' customers have not and cannot aid and abet a violation of the injunction. Nothing suggests that Defendants have continued selling the GenStrips or have violated the injunction in any way. There cannot be, consequently, any colorable argument that the customers are aiding and abetting a violation. Lifescan's threatening letters are based on patently flawed assertions of the legal scope of the injunction. They are bad faith attempts to scare unwitting parties into subservience and to send a perverse warning to the industry against litigating with Lifescan and/or Johnson & Johnson. In contravention of Lifescan's plan, however, Defendants have not been run out of business and stand ready to hold it accountable for its actions.

1 III. **THE COURT SHOULD HOLD LIFESCAN AND ITS COUNSEL IN CONTEMPT**
2     **AND FORCE LIFESCAN TO COMPENSATE DEFENDANTS FOR THE DAMAGES**
3     **SUFFERED AS A RESULT OF ITS CONTEMPT**

4     A.    <u>The Court's Authority to Address the Contempt of its Orders</u>

5    This Court has an ocean of authority to draw upon to address abusive tactics.  The Court can
6 look to its own inherent authority as well as the authority set forth under the Federal Rules of Civil
7 Procedure, including Rules 26 and 27.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991);
8 *Federal Trade Comm'n v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir 2004) (In a
9 civil contempt action, "[t]he moving party has the burden of showing by clear and convincing
10 evidence that the contemnors violated a specific and definite order of the court. The burden then
11 shifts to the contemnors to demonstrate why they were unable to comply.").  Counsel – in addition to
12 the parties they represent – may be sanctioned "as a warning to . . . counsel and as an indication that
13 further disregard of court orders would not be tolerated."  *United States v. Sumitomo Marine & Fire*
14 *Ins.*, 617 F.2d 1365, 1370-71 (9th Cir. 1980) (affirming discovery sanction against attorney
15 personally).  "As in civil contempt, discovery sanctions may be imposed to compel compliance with
16 an order or to compensate the opposite party."  *Falstaff Brewing Corp. v. Miller Brewing Corp.*, 702
17 F.2d 770, 784 n.10 (9th Cir. 1983).  *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1366
18 (9th Cir. 1987) (party liable for actual costs associated with noncompliance of court's order).  In the
19 Ninth Circuit, sanctions are appropriate where the violation is "due to willfulness, bad faith, or fault
20 of the party."  *United States v. Kahaluu Constr. Co., Inc.*, 857 F.2d 600, 603 (9th Cir. 1988).
21 "Disobedient conduct not shown to be outside the litigant's control meets this standard."  *Fair*
22 *Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002).

23    Protective orders are a normal in and essential to modern commercial litigation – and their
24 violation should not be taken lightly.  "Much commercial litigation would be impossible without the
25 ability to rely on protective order constraints." *Systemic Formulas*, 2011 WL 9509, * 1.  One district
26 court noted that:

27    Reliance on protective orders and the diligence of counsel in observing them is
       fundamental to litigation between competitors. In order to effectively adjudicate,
28     information must be assembled and evaluated before trial and presented at trial,

7

subject to controls ensuring that litigation remedies wrongs rather than creating them. If courts, counsel and parties could not rely on protection of confidential information, adjudication of disputes would be prevented in many instances and impaired in others. **The relative infrequency of violations of these orders speaks volumes about the quality and integrity of counsel. Just like the thin yellow line in the middle of the highway, protective orders are an accepted standard that avoids disaster. Integrity and self preservation instinct prevent head-on collisions and the sort of unfair advantage (and distracting side litigation) that have occurred here. Sanctions are needed to preserve the integrity of the system.**

*Id*., at * 2 (emphasis added).

### B. Remedies for Contempt: The Court Should Issue Sanctions, Stay the Preliminary Injunction and/or Dismiss the Lawsuit Altogether

Lifescan's contempt has injured the Defendants severely. No one in the industry relishes in the idea of litigation with Lifescan and/or its corporate parent, Johnson & Johnson. While Defendants customers' formerly viewed them as a dependable source for affordable health care supplies, they no longer do. ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Lifescan should be held liable for the consequences of its own contempt. Defendants respectfully request that the Court hold Lifescan in contempt and issue the strongest sanctions possible. At a minimum, Lifescan should be forced to compensate Defendants for any and all costs associated with its own contempt, including the attorneys' fees and costs incurred with this application. Such costs could include having to buy back unsold inventory and/or responding to

8

lawsuits brought by Defendants' customers.  Defendants would be able to more particularly itemize the costs associated with Lifescan's letters at the order to show cause hearing.  *See Bradford Technologies, Inc. v. NCV Software.com*, 2013 WL 75772, * 7-8 (N.D. Cal. 2013) (sanctions for violation of protective order included attorneys' fees and compensation relating to commercial impact of violation).  Lifescan must also identify, under oath, all of the third parties they contacted, including those it contacted beginning in May 2011 through the date of this writing, and follow up with letters to said nonparties retracting its earlier threatening letters, retracting its threats written and verbal, and providing apologies in writing.  Only after ordering these actions can Defendants continue their business.

       The Court should also withdraw and/or stay the equitable relief – the preliminary injunction – that it recently granted Lifescan.[2]  Its blatant disregard of the Court's Protective Order and intentional mischaracterization of the Court's preliminary injunction order vitiates any entitlement to the Court's equitable powers.  It is, at the very least, fair to stay the preliminary injunction pending the Federal Circuit's ruling on Defendants' appeal.  In *Versata Software, Inc. v. SAP America, Inc.*, 2011 WL 401944, * 7 (E.D. Texas 2011), a jury found infringement and the court subsequently held that a permanent injunction was warranted.  The court, however, stayed the permanent injunction pending the disposition of an appeal in light of the plaintiff's violation of the protective order.  *Id*.  The court ruled that, given the "violation of the Court's order, it is fair to stay the injunction the Court has issued in this case."  *Id*.  Given the decision in *Versata Software* to stay the imposition of a *permanent* injunction based on violations of the protective order, Defendants respectfully submit that the Court is well within its authority to stay the *preliminary* injunction here.

       Lifescan's contempt also warrants terminating sanctions.  Courts are empowered to exercise their discretion and dismiss complaints where the plaintiff violates court orders.  *See, e.g., Falstaff*

---

[2] [redacted]

1 *Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 (9th Cir. 1983) ("a court may dismiss an action pursuant to Rule 37, in accordance with due process, when the facts show that a plaintiff willfully or in bad faith fails to obey a discovery order"); *See also* 6 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE ¶ 26.108[2] (3d ed. 2012) ("If a plaintiff violates a protective order the court may dismiss the complaint. Although a dismissal with prejudice is a harsh sanction, which should be imposed only in extreme situations, it may be imposed when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable. Willful and unexcused violations of a protective order may qualify as contumacious conduct.") Lifescan's contempt was willful and unexcused, and terminating sanctions are warranted.

## IV. CONCLUSION

For the reasons set forth above, this Court should issue an order to show cause why Lifescan should not be held in contempt. The following remedies should be enforced to address Lifescan's contempt: (1) requiring Lifescan to pay Defendants' reasonable expenses, including attorneys' fees in responding to Lifescan's letters to third parties and in connection with the instant application; (2) requiring Lifescan to reimburse Defendants for any product that it buys back from the third parties with whom Lifescan corresponded; (3) forcing Lifescan to write new letters to the contacted nonparties that retract and apologize for Lifescan's earlier correspondence; (4) restricting Lifescan's access to material Defendants mark as confidential under the Protective Order absent a showing of good cause made to the Magistrate; (5) staying the preliminary injunction pending the Federal Circuit's review of Defendants' appeal; (6) terminating the lawsuit; and (7) granting any such other and further relief as this Court deems just and proper in this case.

Dated: April 23, 2013                LATHROP & GAGE LLP

By: /s/ William Rudy
William Rudy
Attorneys for Defendants
Decision Diagnostics Corp. and Pharmatech Solutions, Inc.

Dated: April 23, 2013                ROPERS, MAJESKI, KOHN & BENTLEY

By: /s/ Lael Andara
Lael Andara
Attorneys for Defendants Shasta Technologies, LLC
and Conductive Technologies, Inc.