UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIFESCAN SCOTLAND, LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SHASTA TECHNOLOGIES, LLC, et al.,<br><br>Defendants. | Case No. 11-cv-04494-WHO<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT**<br><br>Re: Dkt. No. 292 |

## INTRODUCTION

Defendants Shasta Technologies, LLC's, Decision Diagnostics Corp.'s (formerly known as InstaCare Corp.), PharmaTech Solutions, Inc.'s, and Conductive Technologies, Inc.'s (collectively the "defendants") have filed a motion for an order to show cause why plaintiffs LifeScan, Inc. and LifeScan Scotland, Ltd. (collectively, "LifeScan ") should not be held in contempt for allegedly violating the Protective Order governing the production of confidential material in this action. For the reasons stated below, the Court grants the motion.

## BACKGROUND

### A.    Factual background

LifeScan owns various patents related to blood glucose testing, targeted at people with diabetes. LifeScan has developed and sells various products practicing its patents, including OneTouch Ultra glucose monitors and OneTouch Ultra "test strips" designed for use with the monitors. LifeScan asserts that defendants have made and distributed an infringing test strip, marketed as the GenStrip.

On March 19, 2013, the Court issued a preliminary injunction barring defendants "and those acting in concert with any of them" from making, using, offering to sell, or selling the GenStrips. Dkt. No. 246 at 29. Pursuant to Federal Rule of Civil Procedure 65(c), as a condition of the preliminary injunction, the Court required LifeScan to post a bond in an amount sufficient to secure payment of any damages to defendants if they were later found to have been wrongfully enjoined. *Id.* at 30. In order to determine the proper amount of the bond, LifeScan sought

information regarding defendants' customers and sales. In response, on March 27, 2013, defendants produced purchase orders and invoices showing sales of the GenStrip and the identity of their customers. Dkt. No. 292-1 ("Shaeffer Declaration") ¶ 5. In accordance with the Court's Model Protective Order for patent actions (the "Protective Order"),[1] defendants designated the requested material HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY (the "AEO Material").

Beginning on April 12, 2013, LifeScan's counsel sent letters to nine of defendants' distributors, advising them of the preliminary injunction and demanding that they cease selling the GenStrip. LifeScan asserts that it learned the identities of seven of the nine distributors through public sources, but concedes that it learned the identities of two of the distributors from defendants' AEO Material.[2] Dkt. No. 299 at 9; Dkt. No. 298 ("Diskant Decl.") ¶ 20.

The nine letters from LifeScan's counsel to defendants' distributors were substantially identical and state the following:

> This firm represents LifeScan, Inc., which sells OneTouch blood glucose monitoring systems; its affiliate LifeScan Scotland, Ltd.; and their parent company Johnson & Johnson (collectively, "LifeScan"). I write to notify you of a preliminary injunction prohibiting the sale or offer for sale of Shasta GenStrip blood glucose test strips ("GenStrip").
>
> The preliminary injunction, a copy of which is enclosed, was issued by the United States District Court for the Northern District of California and is effective as of April 11, 2013 in Case No. 5:11-CV-04494-EJD. The Court has determined that the GenStrip likely infringes LifeScan's U.S. Patent No. 7,250,105 ("the '105 patent"), a copy of which is enclosed, and that LifeScan will likely prevail at trial against the companies responsible for the GenStrip: [defendants]. As a result, the Court has prohibited the Shasta Defendants and any person or entity acting in concert with them from selling or offering to sell the GenStrip within the United States.
>
> We have been advised that [distributor] has offered the GenStrip for

---

[1] The parties agree that the Court's Patent Local Rule 2–2 Interim Model Protective Order governs the disclosure of confidential material in this action.

[2] At oral argument, defendants' counsel intimated that LifeScan had only learned the identity of two of the nine distributors from public sources; not seven, which counsel for LifeScan disputed. Whether two distributors or seven were learned from the AEO Material, the issue is the same. The Court trusts that the parties will address the correct number in their further briefing addressing potential remedies, if relevant.

2

> sale . . . . Such sales infringe the '105 patent. We are writing to demand that [distributor] immediately cease selling or offering to sell the GenStrip. This includes, for example, advertising the GenStrip for sale via the Internet or fulfilling existing or future orders for the GenStrip. LifeScan reserves its right to pursue its full range of legal remedies if your company does not comply.

Dkt. No. 298-21.

Defendants appealed the preliminary injunction and on April 29, 2013, the Federal Circuit granted defendants' motion to stay the preliminary injunction pending the appeal. Shaeffer Decl. ¶ 2. On May 17, 2013, LifeScan's counsel sent letters to each of the distributors advising them that the Federal Circuit had stayed the injunction. Diskant Decl. ¶ 21. The letters state:

> This firm represents LifeScan, Inc., which sells OneTouch blood glucose monitoring systems; its affiliate LifeScan Scotland, Ltd.; and their parent company Johnson & Johnson. I previously wrote to notify your company of a preliminary injunction prohibiting the sale or offer for sale of Shasta GenStrip blood glucose test strips.
>
> On April 29, 2013, the preliminary injunction was stayed pending appeal by the United States Court of Appeals for the Federal Circuit. Oral argument will be heard on June 5, 2013.

Dkt. No. 298-34.

### B. Defendants' allegations

Defendants assert that LifeScan's use of the AEO Material to identify defendants' distributors and send them the cease and desist letters quoted above violates the Protective Order. Defendants note that the Protective Order provides that a party may use confidential material produced by another party "in connection with *this* case only for prosecuting, defending, or attempting to settle *this* litigation." Protective Order ¶ 7.1 (emphasis added).

According to defendants, LifeScan's letters to defendants' distributors are not in connection with this case and do not involve the "prosecution, defending or attempting to settle this litigation" because the preliminary injunction did not bar the distributors from selling their remaining inventories of GenStrips. Consequently, argue defendants, LifeScan's accusations of infringement and threats to pursue legal remedies against the distributors were not related to prosecution of this litigation, but threatened separate litigation. Defendants also note that LifeScan has not presented any evidence demonstrating that the distributors were in concert with or aiding and abetting defendants, such that the distributors would be subject to the preliminary

3

1 injunction pursuant to Rule 65(d).

2     Defendants also assert that the cease and desist letters incorrectly imply that the Court's preliminary injunction directly applies to defendants' distributors (the recipients of the letters), and are in fact intended to frighten defendants' distributors into ceasing their sales of the GenStrip and to send a warning to the industry against litigating with LifeScan and its parent company, Johnson & Johnson. According to defendants, the cease and desist letters have caused at least one customer to demand that defendants recall the GenStrips remaining in inventory and issue refunds and to withhold payment for unrelated goods until defendants buy back the remaining inventory of GenStrips. Dkt. No. 305-1 ¶ 4.

    Defendants have moved for an order to show cause why Lifescan should not be held in contempt and have requested the following sanctions: (1) requiring Lifescan to pay defendants' reasonable expenses, including attorneys' fees in responding to Lifescan's letters to third parties and in connection with the instant application; (2) requiring Lifescan to reimburse defendants for any product that it buys back from the third parties with whom Lifescan corresponded; (3) forcing Lifescan to write new letters to the contacted nonparties that retract and apologize for Lifescan's earlier correspondence; (4) restricting Lifescan's access to material defendants mark as confidential under the Protective Order absent a showing of good cause made to the Magistrate; (5) dissolving the (already stayed) preliminary injunction; (6) terminating the lawsuit; and (7) granting any further relief the Court deems just.

### C. LifeScan's response

    LifeScan argues that its conduct was proper because providing defendants' distributors notice of the preliminary injunction was "part and parcel of LifeScan's prosecution of this litigation." Dkt. No. 299 at 7. LifeScan notes that Federal Rule of Civil Procedure 65(d)(2) provides that a preliminary injunction is binding only on the parties, their agents and employees, and persons "who are in active concert or participation" with them and who receive notice of the preliminary injunction. Fed. R. Civ. P. 65(d)(2)(C). By its own terms, the preliminary injunction issued by the Court likewise applies to defendants "and those acting in concert with any of them." Dkt. No. 246 at 29. LifeScan thus reasons that the preliminary injunction "plainly is broad enough

4

1  to reach any or all of defendants' distributors, if defendants responded to the injunction by
2  attempting to involve any of their distributors in a future act of contempt," so long as the
3  distributors had notice of the preliminary injunction. Dkt. No. 299 at 5. LifeScan's counsel adds
4  that, in his view, he would be committing malpractice if he did not "give notice of the injunction
5  to those who were most likely to be involved in any future potential violation of the injunction."
6  Diskant Decl. ¶ 24.
7  LifeScan also argues that its letters were permitted under the Protective Order, which
8  provides that a party may disclose material marked "Highly Confidential – Attorneys' Eyes Only"
9  to a person who already "possessed or knew the information." Protective Order ¶ 7.3(f).
10 Consequently, argues LifeScan, its letters were permitted because defendants' distributors to
11 whom LifeScan wrote already knew that they were defendants' distributors. In response,
12 defendants assert in their Reply brief that under the terms of the Protective Order, confidential
13 information can be disclosed to persons who already have knowledge of the information only if
14 the disclosure is in connection with prosecuting, defending, or attempting to settle this litigation.

**LEGAL STANDARD**

Civil contempt sanctions may be imposed, upon notice and an opportunity to be heard, "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947); *International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 827 (1994). A party alleging civil contempt "must demonstrate that the alleged contemnor violated the court's order by clear and convincing evidence, not merely a preponderance of the evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir. 1993). Upon a finding of contempt, "an award to an opposing party is limited by that party's actual loss." *In re Crystal Palace Gambling Hall, Inc*., 817 F.2d 1361, 1366 (9th Cir. 1987).

"The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order. But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693 at 695 (internal punctuation and quotations

omitted).

**DISCUSSION**

As described below, the Court finds that LifeScan violated the Protective Order. The Court does not doubt that LifeScan's counsel acted in subjective good faith and did not deliberately violate the Protective Order. Nonetheless, LifeScan's conduct was not based on a reasonable interpretation of the Protective Order and risks disrupting defendants' commercial relationships, which is precisely what the Protective Order seeks to avoid. The Court grants defendants' motion for an order to show cause why LifeScan should not be held in contempt of the Protective Order.

Paragraph 7.1(f) of the Protective Order provides, under a heading labeled "Basic Principles," that a party may use material designated confidential "in connection with this case only for prosecuting, defending, or attempting to settle this litigation." Protective Order ¶ 7.1. The Protective Order further provides that "[s]uch Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order." *Id.* In turn, Paragraph 7.3(f) of the Protective Order directs that the "categories of persons" to whom material designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" may be disclosed include a "person who otherwise possessed or knew the information." *Id.* ¶ 7.3(f). However, as set forth in Paragraph 7.1(f), Protected Material may only be disclosed to the "categories of persons" described in Paragraph 7.3 if the information is used "for prosecuting, defending, or attempting to settle this litigation." Protective Order ¶ 7.1. Consequently, if the Protected Material is *not* used "for prosecuting, defending, or attempting to settle this litigation," the Protected Material may not be shown to the "categories of persons" identified in Paragraph 7.3(f). The question, then, is whether LifeScan's use of the AEO material was in connection with this case for prosecuting this litigation. It was not.

It is firmly established that "a court may not enter an injunction against a person who has not been made a party to the case before it." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996); *see also Scott v. Donald*, 165 U.S. 107, 117 (1897) (Judge Learned Hand explaining that "The decree is also objectionable because it enjoins

6

1   persons not parties to the suit."). This does not mean, however, that non-parties cannot be held in
2   contempt for violating a preliminary injunction. Rather, a court may hold a non-party in contempt
3   for aiding and abetting in the violation of an injunction that has been entered against a party.
4   *Additive Controls*, 96 F.3d at 1395; *see also Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 833 (2d Cir.
5   1930) ( "the only occasion when a person not a party may be punished, is when he has helped to
6   bring about . . . an act of a party"). As the Supreme Court has stated, the effect of an injunction on
7   non-parties "depends on an appraisal of his relations and behavior and not upon mere construction
8   of terms of the order." *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 15 (1945).

9         This common law has been codified in the Federal Rules, which provides that a
10  preliminary injunction is binding only on the parties, their agents and employees, and persons
11  "who are in active concert or participation" with them and who receive notice of the preliminary
12  injunction. Fed. R. Civ. P. 65(d)(2)(C). For example, in *Additive Controls*, the Federal Circuit,
13  applying Rule 65(d), vacated an injunction barring a nonparty corporate entity from disposing of
14  allegedly infringing devices, even though the nonparty was formed and owned by the president of
15  the corporate defendant against which the injunction was issued. *Additive Controls*, 96 F.3d at
16  1395-96. As the Federal Circuit explained, "[h]aving a relationship to an enjoined party of the
17  sort set forth in Rule 65(d) exposes a non-party to contempt for assisting the party to violate the
18  injunction, *but does not justify granting injunctive relief against the non-party in its separate*
19  *capacity.*" *Id.* (emphasis added). On the other hand, in *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283,
20  1305 (Fed. Cir. 2012), the Federal Court found that a district court was not clearly erroneous in
21  finding that a nonparty acted in concert with an enjoined party, such that the nonparty was in
22  contempt of an injunction. In determining that the nonparty acted in concert with the enjoined
23  party, the district court heard "extensive testimony" regarding the interactions between the two
24  and determined that the nonparty cooperated with and relied on the enjoined party to bring the
25  infringing product to market, knowing that doing so would infringe the injunction. *Id.*

26        *Additive Controls* and *Merial Ltd.* thus illustrate the impact of injunctive relief on
27  nonparties: an injunction does not enjoin nonparties acting in their separate capacities; but a
28  nonparty may be held in contempt of an injunction after an assessment of the nonparty's behavior

and relations to the enjoined party. *Additive Controls* and *Merial Ltd.*, along with the other authorities discussed above, also illustrate the flaw in LifeScan's argument.

LifeScan argues that providing notice of the preliminary injunction to defendants' distributors is in connection with this litigation because those distributors can now be held in contempt of the preliminary injunction if they act in concert with defendants to violate the injunction. The purported connection to this action is thus entirely based on what the distributors might do in the future. *See, e.g.,* Dkt. No. 299 at 5 (asserting that the preliminary injunction is "broad enough to reach any or all of Defendants' distributors, *if Defendants responded to the injunction by attempting to involve any of their distributors in a future act of contempt*") (emphasis added); Diskant Decl. ¶ 18 (counsel sent the letters "to enable LifeScan to enforce the preliminary injunction, if necessary, *against future violations*") (emphasis added), *id.* ¶ 24 (describing defendants' distributors as "*most likely to be involved in any future potential violation of the injunction*") (emphasis added). LifeScan's reasoning is flawed. The distributors' possible future conduct does not make them part of this action. On the record before the Court, defendants' distributors are just that: distributors, and their separate conduct is not subject to the preliminary injunction. LifeScan in effect asserts that the distributors are connected to this litigation by virtue of LifeScan's efforts to make them part of this litigation. But LifeScan cannot substitute its speculation about the distributors' possible future actions for a court's appraisal of the distributors' behavior and relations to defendants.

LifeScan argued by analogy that since it could use AEO Material to identify a company to subpoena for a deposition, it is entitled to use AEO Material for its cease and desist letters. But there is a vast difference between using AEO Material to identify a witness in this litigation and using it to threaten distributors against whom separate litigation would be required: the former is permissible under Paragraph 7.1 of the Protective Order in "prosecuting" "this litigation"; the latter is not because distributors are not parties in "this litigation." Assuming that LifeScan did not intend to leave the impression that the distributors were themselves already subject to the injunction (a generous assumption), the cease and desist letters appear to contemplate separate litigation against the distributors, which would not be in connection with this litigation. *See* Dkt.

8

1 No. 298-11 ("LifeScan reserves its right to pursue its full range of legal remedies if your company
2 does not comply.").

3       The Court does not address whether a party can properly use confidential material to
4 identify and mail cease and desist letters to nonparties who are in fact acting in concert with the
5 enjoined party to violate an injunction.[3] For purposes of this motion, it is sufficient to note that
6 while it may be a question of fact whether a nonparty is acting in concert with an enjoined party, it
7 is certainly not a question of fact that LifeScan can decide by fiat. Rather than unilaterally
8 deeming defendants' distributors part of this litigation, LifeScan could have moved the Court to
9 modify the Protective Order to allow the use of AEO Material at issue here. *See, e.g., CBS*
10 *Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 205 (N.D. Cal. 2009) ("district courts have
11 inherent authority to grant a motion to modify a protective order where 'good cause' is shown").[4]

12       At oral argument, counsel for LifeScan cited *Kilopass Tech. Inc. v. Sidense Corp.*, 2012
13 U.S. Dist. LEXIS 47865 (N.D. Cal. Apr. 4, 2012) and *O'M & Assocs., LLC v. Ozanne*, 2011 U.S.
14 Dist. LEXIS 58401 (S.D. Cal. June 1, 2011) for the proposition that defendants had not met their
15 burden of establishing LifeScan's contempt. Those cases are distinguishable and do not support
16 LifeScan's argument. In *Kilopass Tech.* the Court found that the plaintiff had not violated the
17 protective order because it already knew the identities of all the companies it subpoenaed, and did
18 not subpoena the companies of whom it had no knowledge. *Kilopass Tech. Inc.*, 2012 U.S. Dist.
19 LEXIS 47865 at 3, 11-12. In contrast, here LifeScan has conceded that it learned the identity of at
20 least two of the distributors to whom it sent cease and desist letters from confidential material.

21       In *O'M & Assocs., LLC*, the court found that the plaintiff's disclosure of the identity of a
22 transferee account holder to a third party violated the protective order, but the defendant did not
23 establish by clear and convincing evidence that the disclosure was not based on a good faith and
24 reasonable interpretation of the protective order. The protective order defined confidential
25 material as including "tax returns, financial statements, bank account records and statements, and

---

[3] LifeScan does not claim that it had evidence that any distributor was acting in concert with defendants to violate the injunction.

[4] Paragraph 14.1 of the Protective Order states: "Nothing in this Order abridges the right of any person to seek its modification by the court in the future."

other financial information." The court concluded that "[i]t is not unreasonable to construe the language of the Order as applying to actual bank statements and financial documents, but not to the general identity of an account holder." 2011 U.S. Dist. LEXIS 58401, 21. Unlike *O'M & Assocs., LLC*, there is no question here that the identities of defendants' distributors were covered by the Protective Order. As the parties are direct competitors, the identities of their distributors is clearly the sort of material which falls under the scope of the Protective Order, and which defendants would not have disclosed willingly, albeit reluctantly, but for the Protective Order.[5] Accordingly, the Court finds that LifeScan's conduct was not based on a reasonable interpretation of the Protective Order.

To be clear, there is nothing inherently improper about sending good faith cease and desist letters to suspected infringers. Had LifeScan identified the identities of defendants' distributors independently, the Protective Order would not bar LifeScan from contacting them. That LifeScan did in fact independently uncover the identities of a portion of the nine distributors illustrates the feasibility of doing so. As LifeScan notes, "[i]t would be impossible to sell the GenStrip to pharmacies or consumers through legal channels of trade without revealing one's identity." Dkt. No. 299 at 9. That may very well be true, but using AEO Material to identify them was an impermissible shortcut.

## CONCLUSION

For the reasons stated above, the Court GRANTS defendants' motion and ORDERS LifeScan to show cause why it should not be held in contempt for violating the Protective Order. The parties shall address appropriate remedies in their briefing on the order to show cause. LifeScan shall file its opening brief by September 11, 2013. Defendants shall respond on September 25, 2013, and include the evidentiary basis for any monetary remedies sought--the

---

[5] Defendants expressly stressed their fears about producing the distributor information to LifeScan. Defense counsel told one of LifeScan's attorneys over the telephone that "Defendants were very concerned that Lifescan would misuse the purchaser orders and invoices, including to contact and bully Defendants' customers. I warned [counsel for LifeScan] against misusing the documents in a manner inconsistent with the protective order." *See* Shaeffer Decl. ¶ 4. This unheeded warning reinforces the Court's view that LifeScan's failure to protect the information or to seek a modification of the Protective Order was unreasonable.

1 Court will not restrict LifeScan's access to confidential material, dissolve the preliminary

2 injunction, nor terminate the lawsuit. LifeScan may file a Reply by October 9, 2013. The Court

3 will determine whether a hearing is necessary after the briefing is complete.

**IT IS SO ORDERED.**

Dated: August 28, 2013



WILLIAM H. ORRICK
United States District Judge