UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIFESCAN SCOTLAND, LTD., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>SHASTA TECHNOLOGIES, LLC, et al.,<br><br>    Defendants. | Case No. 11-cv-04494-WHO<br><br>**ORDER IMPOSING SANCTIONS AGAINST LIFESCAN PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37**<br><br>Re: Dkt. No. 336 |

## INTRODUCTION

Before the Court are the parties' responses to the Court's order to show cause why plaintiff LifeScan should not be held in contempt for violating the Protective Order in this case. The Court finds that LifeScan's violation of the protective order is sanctionable under Federal Rule of Civil Procedure 37 but does not constitute contempt. Accordingly, the Court orders LifeScan to pay the defendants' attorneys' fees in incurred in connection with LifeScan's violation of the Protective Order.

## BACKGROUND

LifeScan owns various patents related to blood glucose testing, targeted at people with diabetes. LifeScan has developed and sells various products practicing its patents, including OneTouch Ultra glucose monitors and OneTouch Ultra "test strips" designed for use with the monitors. The defendants have developed and manufacture and sell a disposable test strip called the GenStrip, which is designed for use with LifeScan's OneTouch Ultra monitors. On September

9, 2011, LifeScan filed a patent infringement suit against the defendants, asserting that the Genstrip infringes on LifeScan's patents.

LifeScan learned the identity of two of the defendants' distributors through material the defendants designated "attorneys' eyes only," pursuant to the Protective Order governing the disclosure of confidential material in this case. Dkt. No. 336.[1] LifeScan used that information to mail the distributors letters advising them of a preliminary injunction entered against the defendants. The letters also implied that the distributors were themselves subject to the preliminary injunction, despite the absence of any evidence that the distributors were acting in concert with the defendants or were otherwise subject to Federal Rule of Civil Procedure 65(d), which provides that a preliminary injunction is binding only on the parties and those "who are in active concert or participation" with them and who receive notice of the preliminary injunction. The defendants assert that, as a result, they have been forced to buy back remaining inventory from the distributors and their commercial relationships have suffered.

On August 28, 2013, the Court ordered LifeScan to show cause why it should not be held in contempt for violating the Protective Order. The Court also ordered the defendants to provide the Court "the evidentiary basis for any monetary remedies sought." Dkt. No. 336 at 10.[2]

LifeScan asserts that a finding of civil contempt is not warranted because there was no violation of the protective order, and even if there was, LifeScan's conduct was reasonable, in good faith and in substantial compliance with the protective order. LifeScan also asserts that if the Court adheres to the view that the protective order was violated and that a monetary sanction is appropriate, the Court should deny the motion for contempt and instead award a monetary penalty as a sanction under Rule 37. In response, the defendants note that the Court previously determined that the protective order was violated and argue that LifeScan did not substantially comply with the protective order. The defendants argue that the Court should find LifeScan in contempt and propose various remedies.

---

[1] A detailed background of the present dispute is set forth in the Court's August 28, 2013 order. Dkt. No. 336.
[2] Page citations to docket entries are to the ECF page numbers.

**LEGAL STANDARD**

A party alleging civil contempt must establish that the accused party i) violated a court order, ii) beyond substantial compliance, iii) not based on a good faith and reasonable interpretation of the order, iv) by clear and convincing evidence. *See Labor/Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir. 1993). "The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order. But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693 at 695 (internal punctuation and quotations omitted). The Federal Circuit has stated that "[i]f there is a fair ground of doubt as to the wrongfulness of the defendant's actions said to be in contempt, the District Court should not entertain the civil contempt proceeding or find contempt." *Preemption Devices, Inc. v. Minnesota Min. & Mfg. Co.*, 803 F.2d 1170, 1173 (Fed. Cir. 1986).

**DISCUSSION**

**A. LifeScan violated the Protective Order**

LifeScan argues in its response to the order to show cause that it did not violate the Protective Order because i) the identities of the defendants' distributors were "in the public domain" and ii) even if the identities were confidential, LifeScan's disclosure was permitted by the Protective Order because the information was disclosed in connection with prosecuting this litigation and to persons already aware of the information, given that the distributors already knew that they were the defendants' distributors.

The Court's order to show cause set forth in detail why LifeScan's conduct violated the Protective Order. See Dkt. No. 336. This was not a trivial or technical violation. As stated in that order, LifeScan concedes that it learned the identities of two of the defendants' distributors from confidential material. *Id*. at 2 (citing Dkt. No. 298 (Diskant Decl.) ¶ 20). The Court also previously rejected LifeScan's argument that its letters were for the purposes of *this* litigation. *See* Dkt. No. 336 at 6-9. LifeScan's effort to reargue these points is not persuasive and the Court will

1  not revisit its prior determination.

2  **B. LifeScan's conduct does not warrant a contempt finding**

3  LifeScan asserts that its conduct does not constitute contempt because the defendants have not established by clear and convincing evidence that it was unreasonable for LifeScan to believe that the letters were permitted by the Protective Order because i) the identities of the defendants' distributors were not confidential *or* because ii) the letters were part of "this litigation."

LifeScan's first argument is meritless. The defendants have presented clear and convincing evidence that it was unreasonable for LifeScan to believe that the identities of the defendants' distributors were not subject to the Protective Order. LifeScan concedes that it learned the identities through information the defendants had designated for attorneys' eyes only. Moreover, as stated in the order to show cause:

> Defendants expressly stressed their fears about producing the distributor information to LifeScan. Defense counsel told one of LifeScan's attorneys over the telephone that "Defendants were very concerned that Lifescan would misuse the purchaser orders and invoices, including to contact and bully Defendants' customers. I warned [counsel for LifeScan] against misusing the documents in a manner inconsistent with the protective order." This unheeded warning reinforces the Court's view that LifeScan's failure to protect the information or to seek a modification of the Protective Order was unreasonable.

Dkt. No. 336 at 10 n.5 (internal citations omitted). If LifeScan believed that the information was not properly designated confidential, LifeScan should have challenged the designation through the mechanism detailed in the Protective Order. Protective Order ¶ 6.[3] The Protective Order specifically states that "all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge." Protective Order ¶ 6.3. Accordingly, LifeScan's belief that the identities were not confidential, and thus not subject to the Protective Order, was not reasonable.

However, the Court agrees that there is not clear and convincing evidence that it was unreasonable for LifeScan to believe that its issuance of the letters was in connection with its prosecution of "this litigation" within the meaning of the Protective Order.   Protective Order ¶

---

[3] http://www.cand.uscourts.gov/stipprotectorder

4

7.1. LifeScan points out that "[i]t is indisputable that if a third party who had actual notice of the injunction colluded with the Defendants to violate the injunction, that third party could be found in contempt in this litigation." Dkt. No. 352 at 16. LifeScan thus reasons that "[i]t should be likewise indisputable that it would be part of prosecuting this case for LifeScan to pursue a motion for contempt in this case against such third parties." In support, LifeScan notes:

> In the long history of Rule 65 and its common law predecessors, we have found no case finding that notice to third parties of the existence of an injunction is not for purposes of the underlying litigation and no case in which a party has been held in contempt – or even accused of contempt – for giving notice of the existence of an injunction to third parties named only in confidential documents.

*Id*. at 22. LifeScan argues that "the absence of even a prior dispute on this issue supports LifeScan's view that its conduct was – at the least – a reasonable implementation of Rule 65." *Id*.

The defendants do not address LifeScan's argument on the merits or dispute the lack of any case addressing a similar situation. Rather, the defendants' response merely notes that the Court's order to show cause already determined that LifeScan's conduct was not in connection with this litigation. Dkt. No. 367 at 10.

The Court previously indicated that it did not question the subjective good faith of LifeScan's counsel in sending the cease and desist letters. (Dkt. No. 336 at 6). It now finds that the absence of authority addressing whether notice to third parties of an injunction is "for prosecuting, defending, or attempting to settle this litigation [where the injunction was entered]" means that the Court cannot say that LifeScan's position was unreasonable by clear and convincing evidence. Given that the injunction entered in this case binds third parties acting in concert with the defendants who receive notice of the injunction and that no one disputes LifeScan's right to send cease and desist letters to third parties whose identities it knew through public sources, it was not unreasonable to believe that providing notice of the injunction to third parties was in connection with "this litigation." LifeScan's interpretation was wrong. As set forth in the order to show cause, "[t]he distributors' possible future conduct does not make them part of this action," and LifeScan's letters violated the Protective Order. But because there is no clear and convincing evidence that LifeScan did not have a good faith and reasonable interpretation of the

5

Protective Order, the Court finds that LifeScan's conduct does not constitute contempt.

### C. Remedies for LifeScan's violation of the Protective Order

LifeScan's violation of the Protective Order, while not contempt, is still sanctionable under Federal Rule of Civil Procedure 37. *See, e.g., Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) ("failure to obey the protective discovery order exposed counsel and Falstaff to liability under Rule 37(b)(2) for the resulting costs and attorney's fees"); *Life Technologies Corp. v. Biosearch Technologies, Inc.*, C-12-00852 WHA JCS, 2012 WL 1600393 (N.D. Cal. May 7, 2012) ("Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order issued pursuant to Rule 26(f)."); *see also Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012) ("There is thus significant authority in support of the imposition of Rule 37(b) sanctions for violation of Rule 26(c) protective orders.").

Having established that LifeScan violated the protective order, the Court must determine the appropriate remedy. The defendants assert that they are entitled to i) attorneys' fees of $41,914 in connection with briefing their motion for an order to show cause and the Court's order to show cause and ii) $573,149 in lost profits resulting from LifeScan's violation of the Protective Order. The defendants also ask the Court to order LifeScan to iii) send letters informing the recipients of Mr. Diskant's earlier letters of the Court's contempt ruling and the reasons therefore, iv) create and post a video on Lifescan's website acknowledging and apologizing for the contempt, v) grant the defendants leave to conduct discovery into the scope of Lifescan's contempt and the associated injury and permit further briefing regarding the same.

    a. <u>Attorneys' fees</u>

Defendants Decision Diagnostics Corp. and Pharmatech Solutions, Inc. assert that they have incurred $23,014 in fees in connection with briefing the defendants' motion for an order to show cause and the Court's order to show cause. Dkt. No. 367-1 (Shaeffer Decl.) ¶ 2. Defendants Shasta Technologies, LLC and Conductive Technologies, Inc. assert that they have incurred $18,900 in fees in connection with briefing the defendants' motion for an order to show cause and the Court's order to show cause. Dkt. No. 367-3 (Kanach Decl.) ¶ 2. The defendants assert a total

of $41,914 in attorneys' fees. LifeScan responds that "[t]he amount of attorneys' fees that Defendants expended on this motion is supported by competent evidence. If a monetary penalty is awarded, it should be limited to attorneys' fees." Dkt. No. 373-21 at 19.

The Court agrees that the defendants' request for attorneys' fees is supported by competent evidence and GRANTS the defendants request for attorneys' fees. Defendants Decision Diagnostics Corp. and Pharmatech Solutions, Inc. are awarded $23,014 in attorneys' fees and defendants Shasta Technologies, LLC and Conductive Technologies, Inc. are awarded $18,900 in attorneys' fees.

      b.  <u>Lost profits</u>

The defendants argue that the Court should order LifeScan to reimburse the defendants $573,149 for lost profits from sales to four distributors that were allegedly "destroyed" as a result of LifeScan's letters. Dkt. No. 367 at 16. In support, the defendants have submitted the declaration of Keith Berman, Principal Executive Officer and Chief Financial Officer of defendant Decision Diagnostics and President of defendant PharmaTech Solutions. Mr. Berman asserts that the defendants received a purchase order from each of those four distributors, but "after the distributor and/or the distributor's customers received a letter from Mr. Diskant, Defendants were not able to realize the full benefit contemplated by the purchase order." Dkt. No. 383-3 ("Berman Decl.") ¶ 8. According to Mr. Berman, "the difference between the value of the purchase order and the lessened benefit that Decision Diagnostics and PharmaTech Solutions actually received because of Mr. Diskant's letters" is $573,149. *Id.*

LifeScan responds that two of the four distributors identified by the defendants did not receive a letter that violated the Protective Order and, consequently, profits allegedly lost from sales to those distributors, which the defendants allege total $311,967, should be disregarded. As for the two distributors that did receive a letter in violation of the Protective Order, LifeScan asserts that the defendants have provided no competent evidence that the defendants' lost profits—allegedly $261,182—are due to LifeScan's letters. The Court addresses each argument in turn.

*First*, the Court agrees that sales allegedly lost to the two distributors that did not receive the improper letter from LifeScan are not at issue. One of those distributors did not receive *any*

7

letter from LifeScan, proper or improper. With respect to that distributor, Mr. Berman asserts "on information and belief," that it "refused to perform on the purchase order because of letters sent to [the distributor] and/or [the distributor's] retail partners," causing the defendants in $100,725 in lost profits. Berman Decl. ¶ 10(b), (d).

The defendants have not proffered any support for this assertion. The distributor did not itself receive a letter from LifeScan, and there is no competent evidence that one of its retail partners received such a letter, much less that any letter sent to the retail partner violated the Protective Order. There are no declarations or communications from the distributor or its retail partner. Mr. Berman does not even disclose the supposed retail partner that received a letter from LifeScan, nor does Mr. Berman identify who told him that the retail partner received such a letter. The defendants have thus wholly failed to establish that LifeScan is to blame for the defendants' $100,725 in lost profits to that distributor.

The other distributor did receive a letter from LifeScan, but it is undisputed that LifeScan determined its identity through publicly available information. *See* Dkt. No. 352 at 9. Accordingly, that letter did not violate the Protective Order and, consequently, Mr. Berman's unsupported assertion that the defendants lost $211,242 in profits from sales to that distributor "as a direct result of Mr. Diskant's letter" is beside the point. *Id.* ¶ 11(c).

*Second*, the Court also agrees that the defendants have not provided adequate evidentiary support for their claims that they lost $261,182 in profits from sales to the two distributors that did receive letters from LifeScan in violation of the Protective Order. Mr. Berman asserts that the distributors agreed to purchase certain quantities of GenStrips from the defendants, and that the distributors "cancelled the purchase order and refused to take any further shipments in accordance with its terms . . . as a direct result" of LifeScan's letters to the distributors. Berman Decl. ¶¶ 9, 12. The only evidence proffered by the defendants is Mr. Berman's bald assertion; there are no declarations or communications from the distributors reflecting that the letters from LifeScan had any impact on the distributors, much less that the letters caused them to cancel the purchase orders. Mr. Berman's unsupported assertion is an insufficient evidentiary basis for the monetary remedies the defendants seek. The Court DENIES the defendants' request for lost profits.

Moreover, Mr. Berman's declaration indicates that the defendants' distributors face challenges selling their inventory of GenStrips—and therefore may not want additional inventory—for reasons unrelated to LifeScan's letters. Mr. Berman states that he has received calls from "many" of the 8,500 independent pharmacies in the United States "demanding that Defendants buy back their existing GenStrip inventory." Berman Decl. ¶ 5. Mr. Berman states that he "do[es] not know how many of these independent pharmacies received letters from Mr. Diskant." *Id.* LifeScan responds that it only sent letters to nine of the defendants' "wholesale distributor[s] or online seller[s]," as LifeScan stated in its earlier briefing in response to the defendants' motion for an order to show cause. Dkt. No. 373-20 ("Diskant Decl.") ¶ 4.[4] None of those entities appear to be "independent pharmacies," and the distributors that did receive the improper letters are addressed above. LifeScan's assertion that it only sent letters to nine entities is consistent with the defendants' failure to provide evidence from any of the "many" independent pharmacies indicating that they received a letter from LifeScan. Accordingly, to the extent that many pharmacies are demanding that the defendants buy back their existing GenStrip inventory, it appears to the Court that they are doing so for reasons unrelated to the letters that LifeScan sent to the two distributors that it identified from confidential information.

The record suggests various reasons that the defendants' distributors or pharmacies may face challenges moving their inventory of GenStrips. Defendant Decision Diagnostics' Form 10-Q filed with the SEC for the quarter ending June 30, 2013 notes that "the overall at home testing market is being hindered by the general poor economic conditions [and] longer payment cycles from insurers." Dkt. No. 373-14 at 23.

In addition, LifeScan's economic expert notes that, in a departure from the usual practice of a [company] selling test strips that are compatible *only* with that particular company's glucose meters . . . . [t]he GenStrip is the only disposable glucose test strip that is intended for use with glucose meters that are distributed by another company." Dkt. No. 373-10 ¶¶ 20-21. The expert concludes that "successfully launching such a product would require a significant investment to

---

[4] As noted, only two of those entities' identities were discovered through confidential information; the remaining seven were identified from publicly available information.

create awareness and to educate," which the defendants have not done, instead limiting their advertising to "low visibility, low-cost promotion via the Internet." *Id*. ¶¶ 22-23. The defendants' apparent failure to invest in substantial marketing activities may indicate that consumer awareness of the GenStrip is limited and may not support the level of consumer interest anticipated by the defendants' distributors. The expert also notes that the GenStrip has received FDA approval only for particular meters that were purchased before July 2010 and, as a result, the GenStrip "is not approved for use with many of the OneTouch Ultra meters that are currently being used." *Id.* ¶ 29.

The preceding discussion is not an endorsement of LifeScan's perspective on the defendants' product or marketing strategy. It does provide a plausible alternative explanation for the defendants' purported lost profits. But the reason the Court will not award sanctions on this basis is that defendants failed to provide sufficient evidence showing that LifeScan's conduct caused them to lose profits.

  c. <u>Letters and video from LifeScan explaining contempt ruling and apologizing for contempt</u>

The Court DENIES the defendants' request that the Court order LifeScan to "send letters informing the recipients of Mr. Diskant's earlier letters of the Court's contempt ruling and the reasons therefore" and to "create and post a video on Lifescan's website acknowledging and apologizing for the contempt." The Court's order and the publicly filed briefing adequately explain the relevant issues for any interested parties.

  d. <u>Further discovery</u>

The defendants request leave "to conduct discovery regarding Lifescan's letter writing campaign and permit further briefing regarding actual damages caused by Lifescan's contempt." Dkt. No. 367 at 15. Mr. Berman asserts that he has received calls from "many" pharmacies demanding that the defendants buy back inventory. The defendants do not need leave of the Court to ask any of these pharmacies whether they received a letter from LifeScan. Defendants' failure to provide direct or indirect evidentiary support from the pharmacies that points to a relationship between LifeScan's conduct and defendants' alleged lost profits is significant. In light of LifeScan's assertion that it only sent letters to the nine entities already disclosed in its prior

briefing in response to the defendants' motion for an order to show cause, and the defendants' failure to present any evidence to the contrary, the Court DENIES the defendants' request for additional discovery.

**CONCLUSION**

LifeScan's violation of the Protective Order is sanctionable under Federal Rule of Civil Procedure 37. LifeScan is ordered to pay defendants Decision Diagnostics Corp. and Pharmatech Solutions, Inc. $23,014 in attorneys' fees, payable by LifeScan within 45 days of this Order. LifeScan is ordered to pay defendants Shasta Technologies, LLC and Conductive Technologies, Inc. $18,900 in attorneys' fees, payable by LifeScan within 45 days of this Order. The Court finds that LifeScan's violation of the protective order does not constitute contempt.

**IT IS SO ORDERED**.

Dated: November 6, 2013



WILLIAM H. ORRICK
United States District Judge